# United States Court of Appeals
## For the First Circuit

---

No. 05-2690

THOMAS S. McCLOSKEY AND KEVIN P. McCLOSKEY,
AS CO-ADMINISTRATORS OF THE ESTATE OF PHILIP McCLOSKEY,

Plaintiffs, Appellants,

v.

ROBERT S. MUELLER III, IN HIS CAPACITY AS DIRECTOR OF
THE FEDERAL BUREAU OF INVESTIGATION, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

---

Before

Selya and Lipez, Circuit Judges,
and Saylor,* District Judge.

---

Kevin J. Reddington for appellants.
Carol L. Shea, Special Assistant United States Attorney
(Chief, Civil Division, District of Vermont), with whom David V.
Kirby, United States Attorney (District of Vermont), was on brief,
for federal appellees.
Gary Lee Sampson on brief pro se ipso.

---

May 16, 2006

---

* Of the District of Massachusetts, sitting by designation.

**SELYA**, **Circuit Judge**. This appeal arises out of a tragic series of events that culminated in the murder of Philip McCloskey. The co-administrators of the victim's estate sought damages from both the federal government and the murderer, Gary Lee Sampson. The district court dismissed their action. See McCloskey v. Mueller, 385 F. Supp. 2d 74, 88 (D. Mass. 2005). Because there is no principled way that the frontiers of tort law can be expanded to encompass the theory of liability that the co-administrators have premised on these horrific facts, we affirm the order of dismissal.

## I. BACKGROUND

Because the district court disposed of this case on a motion to dismiss, see Fed. R. Civ. P. 12(b), we glean the relevant facts from the co-administrators' amended complaint (assuming, without determining, that those facts are true), supplemented by certain undisputed items.

On July 23, 2001, Sampson telephoned the Boston office of the Federal Bureau of Investigation (FBI) and spoke with an FBI employee, William H. Anderson. Sampson explained to Anderson that he was in Abington, Massachusetts; that he was wanted for armed robbery; and that he wished to surrender to the authorities. Anderson disconnected the call either accidentally or purposely — the amended complaint contemplates both possibilities — and made no attempt to reconnect it, investigate it, or report it to any other law enforcement officer.

Sampson never called back; instead, after spending several hours fruitlessly awaiting the FBI's arrival in Abington, he embarked upon a "killing spree." The spree began the next day when Sampson abducted and murdered a complete stranger, Philip McCloskey. Before local authorities finally apprehended him on July 31, Sampson had killed two other men as well.

Sampson eventually pleaded guilty to a federal charge of carjacking resulting in Philip McCloskey's death. See 18 U.S.C. § 2119(3). Following a penalty-phase trial, the district court imposed a death sentence. See United States v. Sampson, 300 F. Supp. 2d 275 (D. Mass. 2004). That sentence is currently on appeal.

After initially denying that a Sampson-initiated telephone call ever took place, Anderson finally admitted the call's occurrence. In due season, Thomas and Kevin McCloskey, co-administrators of Philip McCloskey's estate, notified the United States, see 28 U.S.C. § 2675(a), and then commenced a civil action in the United States District Court for the District of Massachusetts. They asserted damages claims under both the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, and 42 U.S.C. § 1983, against the United States, the FBI, Robert S. Mueller III, in his official capacity as director of the FBI, and

Anderson (collectively, the federal defendants).[1]  They also advanced pendent state-law claims for wrongful death against Sampson.

The federal defendants filed an omnibus motion to dismiss.  See Fed. R. Civ. P. 12(b)(1), (6).  Sampson likewise moved to dismiss the claims against him.  The co-administrators filed a timely opposition.

After pondering the matter, the district court dismissed the case in toto.  See McCloskey, 385 F. Supp. 2d at 88.  The court held that, under the FTCA, the United States was the only proper defendant and dismissed the tort claims against the FBI, Mueller, and Anderson for that reason.  See id. at 77-78.  It then concluded that it was without subject-matter jurisdiction over the FTCA claims against the United States because of the discretionary function exception, see id. at 79-81 (citing 28 U.S.C. § 2680(a)), and, alternatively, because the government would not be liable under Massachusetts law had it been acting as a private person in the same or similar circumstances, see id. at 81-85 (citing 28 U.S.C. § 1346(b)).  The court dispatched the section 1983 claims

---

[1]Despite naming the FBI as a defendant, the amended complaint does not textually set forth any claim against the FBI; all claims against the federal defendants are directed only to the United States, Mueller, and Anderson.  Based on other filings, the district court interpreted each of these claims as asserted against the FBI as well.  See McCloskey, 385 F. Supp. 2d at 78 n.3. Because no party contests that interpretation, we treat the claims in a similar fashion.

-4-

for failure to allege any action under color of state authority. Id. at 87.  Once it had dismissed the federal claims, the court declined to exercise supplemental jurisdiction over the state-law claims against Sampson.  Id. at 88 (citing 28 U.S.C. § 1367(c)(3)).  This timely appeal ensued.

## II.  DISCUSSION

We begin our analysis by acknowledging the applicable standard of review.  We then address, in turn, the FTCA and section 1983 claims.  Finally, we touch upon the dismissal of the claims against Sampson.

### A.  Standard of Review.

The district court dismissed the FTCA counts for want of subject-matter jurisdiction and the section 1983 counts for failure to state an actionable claim.  Although these rulings derive from different subsections of Rule 12(b), compare Fed. R. Civ. P. 12(b)(1), with Fed. R. Civ. P. 12(b)(6), our standard of review sounds the same familiar refrain.

Under either rule, we review the lower court's dismissal order de novo, accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof.  See, e.g., Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 16 (1st Cir. 2006) (Rule 12(b)(1)); Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) (Rule 12(b)(6)).  We are not wedded to the lower court's rationale and may affirm an

-5-

order of dismissal on any basis made apparent by the record.  See
Gabriel v. Preble, 396 F.3d 10, 12 (1st Cir. 2005).

## B.  **The FTCA Claims**.

"It is beyond cavil that, as the sovereign, the United
States is immune from suit without its consent."  Muirhead v.
Mecham, 427 F.3d 14, 17 (1st Cir. 2005).  The FTCA embodies one
instance of such consent.  It comprises a limited waiver of the
federal government's sovereign immunity, Shansky v. United States,
164 F.3d 688, 690 (1st Cir. 1999), and grants federal courts
jurisdiction over claims against the United States that fall within
its ambit.  This includes claims

> for injury or loss of property, or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of
> the Government while acting within the scope
> of his office or employment, under
> circumstances where the United States, if a
> private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. § 1346(b).

Here, the co-administrators assert in substance that the
federal defendants were negligent in failing to apprehend Sampson
after his attempted surrender.[2]  That negligence, they posit,

---

[2]To the extent that the co-administrators alleged, and the
district court dismissed, FTCA claims based on theories of
negligent supervision or inadequate technology, we consider any
potential challenges abandoned.  See United States v. Zannino, 895
F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation,
are deemed waived.").

resulted in Philip McCloskey's death. Although the co-administrators name various federal defendants in these counts, the United States is the only proper defendant in such an action. See 28 U.S.C. §§ 1346(b), 2674, 2679; see also Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000). Consequently, the district court correctly held that no FTCA claim can lie against the FBI, Mueller, or Anderson.

Against this backdrop, we turn to the FTCA claims against the United States.[3] To survive, an FTCA claim must successfully surmount the jurisdictional hurdle erected by 28 U.S.C. § 1346(b). That section restricts the liability of the United States to circumstances in which "a private person would be liable . . . in accordance with the law of the place where the act or omission occurred." Id. Since every relevant event in this case occurred in Massachusetts, the substantive law of that jurisdiction constitutes the "law of the place" for present purposes. Thus, the co-administrators must identify some basis in Massachusetts law for holding a private party liable in tort for acts or omissions comparable to those they attribute to the FBI and its

---

[3]Although the FTCA is mentioned explicitly only in count 1 of the amended complaint, we treat the state-law wrongful death claims against the federal defendants (counts 4-6) as coming under the umbrella of the statute. This recasting benefits the co-administrators, as the FTCA provides the exclusive remedy against the United States for wrongful death. See 28 U.S.C. § 2679(a)-(b).

-7-

functionaries.  See Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005).

In appraising the height of this hurdle, it is important to frame the scope of our inquiry.  The search for analogous state-law liability is circumscribed by the explicit language of the FTCA, which restricts that search to private liability.  See Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 537 (1st Cir. 1997).  In other words, we must look for "some relationship between the governmental employee[] and the plaintiff to which state law would attach a duty of care in purely private circumstances."  Id. (citation and internal quotation marks omitted).

The flip side of this coin is that we are not at liberty to derive analogues from instances in which state law enforcement officers — and only state law enforcement officers — would be liable under state law.  In the FTCA milieu, "the federal government does not yield its immunity with respect to obligations that are peculiar to governments or official-capacity state actors and which have no private counterpart in state law."  Bolduc, 402 F.3d at 57.

Refined to bare essence, our obligation is to appraise the height of the section 1346(b) hurdle through a narrowed lens and ask only whether, under Massachusetts law, a private party who is approached by a fugitive seeking to turn himself in would be guilty of actionable negligence if he did nothing in response and

the fugitive thereafter committed a series of violent crimes. On the pleadings before us (which do not allege any special circumstances), we answer that isthmian question in the negative.

In Massachusetts, "a tort plaintiff must show that (1) the defendant owed him a duty, (2) the defendant breached that duty, (3) the breach constituted a proximate cause of the ensuing harm, and (4) the breach caused actual injury." Fithian v. Reed, 204 F.3d 306, 308 (1st Cir. 2000). Massachusetts courts have recognized the generic applicability of relevant Restatement of Torts principles to the first step of this quadripartite algorithm. See Mosko v. Raytheon Co., 622 N.E.2d 1066, 1069-70 & n.7 (Mass. 1993); Jean W. v. Commonwealth, 610 N.E.2d 305, 315 (Mass. 1993) (Liacos, C.J., concurring); see also Rakes v. United States, 352 F. Supp. 2d 47, 58-60 (D. Mass. 2005), aff'd, 442 F.3d 7 (1st Cir. 2006). It is on that step that our subsequent discussion will focus; after all, if a private person under the same circumstances would owe no duty to a victim, there would be no state-law liability (and, thus, no subject-matter jurisdiction over the co-administrators' FTCA claims). See Newlin v. New Eng. Tel. & Tel. Co., 54 N.E.2d 929, 931 (Mass. 1944) (deeming it "settled" that "if the defendant owed no duty of care to the plaintiff . . . there could be no actionable negligence on [the defendant's] part").

Generally speaking, a defendant's duty is more limited when negligence consists of an omission rather than an act of

-9-

commission.  See Carrier v. Riddell, Inc., 721 F.2d 867, 868-69 (1st Cir. 1983) (applying Massachusetts law).  So too, as a general matter, "[t]here is no duty . . . to control the conduct of a third person as to prevent him from causing physical harm to another." Restatement (Second) of Torts § 315 (1965) (Restatement); see Mosko, 622 N.E.2d at 1069-70 & n.7.  These generalities fairly describe the situation in the case at hand.  That is not the end of the matter, however, because there are at least two exceptions to the general rule that can be distilled from these principles.  The co-administrators' FTCA claims necessarily stand or fall on the applicability vel non of these exceptions.

The first exception comes into play when "a special relation exists between the actor and the [plaintiff] which gives [the plaintiff] a right to protection."  Restatement § 315; see Jean W., 610 N.E.2d at 315 (Liacos, C.J., concurring).  Emblematic of this type of special relation is the relationship of, say, a common carrier to a passenger or an innkeeper to a guest.[4]  See Restatement § 314A.  This exception also may have some bearing when one "takes . . . custody of [the plaintiff] under circumstances [that] deprive the [plaintiff] of his normal opportunities for protection."  Id.  That duty may well confer upon the custodian a

---

[4]Take, for example, an innkeeper, who may be said to assume a duty to use reasonable care to secure the demised premises and, thus, may be held liable for the harm done by a marauder if he defaults on that duty.  See, e.g., Fund v. Hotel Lenox of Boston, Inc., 635 N.E.2d 1189, 1190 (Mass. 1994).

duty to protect his charge from the conduct of third persons.[5] See id. § 320.

The second exception arises when "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." Id. § 315; see Jean W., 610 N.E.2d at 315 (Liacos, C.J., concurring). Traditionally, parent-child, master-servant, and possessor-licensee relationships fit into this taxonomy.[6] See Restatement §§ 316-318. In the same vein, one may acquire a duty to control a third person if he "takes charge" of that third person and "knows or should know [that the third person is] likely to cause bodily harm to others if not controlled."[7] Id. § 319.

In the absence of a special relationship sufficient to trigger one of these exceptions, a private party is not liable for failing, either intentionally or inadvertently, to exercise control

_____

[5]Take, for example, a school, which may be said to assume a duty of care toward its students and, thus, may be held liable for foreseeable harm that comes to them if it defaults on that duty. See, e.g., Marquay v. Eno, 662 A.2d 272, 279 (N.H. 1995) (collecting cases).

[6]Take, for example, a parent, who may be said to assume a duty of reasonable care to prevent his minor child from inflicting harm on others and, thus, may be held liable for the harm done by the child if he defaults on that duty. See, e.g., Caldwell v. Zaher, 183 N.E.2d 706, 707 (Mass. 1962).

[7]Take, for example, a jailer, who may be said to assume a duty of reasonable care to control a prisoner in his custody and, thus, may be held liable to one whom the prisoner harms if he (the jailer) defaults on that duty. See, e.g., Buchler v. State, 853 P.2d 798, 801-02 (Or. 1993).

-11-

over the actions of a third party so as to protect others from harm.  Id. § 315 cmt. b.  This is so even if the prospective harm is substantial and "the actor realizes that he has the ability to control the conduct of [the] third person, and could do so with only the most trivial of efforts."  Id.

It follows inexorably from the foregoing that, for a duty to attach here, the amended complaint must reveal the existence of a special relationship between either Anderson (and, thus, the FBI) and Philip McCloskey or between Anderson (and, thus, the FBI) and Sampson.

It is readily evident that, at the times material hereto, no special relationship had been forged between Anderson (or the FBI) and the decedent.  Prior to his murder, Philip McCloskey was a random member of the public at large.  Neither Anderson nor the FBI had any reason to know that he existed.  He occupied no special position that might be deemed even faintly analogous to a common carrier's passenger or an innkeeper's guest.  Nor did Anderson or the FBI "take custody" of Philip McCloskey in any way, shape, or form.

So viewed, this case is easily distinguished from Mulloy v. United States, 884 F. Supp. 622 (D. Mass. 1995), much bruited by the co-administrators.  There, an officer's wife living on an army base was raped and murdered by an enlistee.  The court, applying Illinois law, recognized a special relationship between the army

and the victim, given her status as the army's invitee and a tenant on the base. See id. at 632. That relationship furnished a modicum of support for a theory by which the United States might be held liable under state law. See id. Here, however, as we have said, neither Anderson nor the FBI had any prior relationship with Philip McCloskey, nor did he ever act in reliance on any invitation by them.

To say more on this point would be to paint the lily. We hold, without serious question, that no special relationship existed between Anderson or the FBI, on the one hand, and Philip McCloskey, on the other hand, sufficient to give rise to a duty under Massachusetts tort law either to protect McCloskey or to ward off his slayer.

The relationship between Sampson and Anderson is not quite so easily dismissed. There is some semblance of a pre-murder tie, as Sampson's telephone call to Anderson linked the two men, however fleetingly (and, thus, linked Sampson and the FBI). We nonetheless conclude that this solitary link is inadequate to give rise to a duty on Anderson's part to control Sampson.

Anderson and Sampson were not in a sustained relationship akin to that enjoyed by a parent and child, a master and servant, or a possessor and licensee. The question, then, boils down to whether it can be said, under the generous pleading standard applicable at the motion-to-dismiss stage, that Anderson (and,

-13-

thus, the FBI) took charge of Sampson in such a way or to such an extent that his activities could give rise to a duty to exercise control over Sampson. Cf. Sheridan v. United States, 487 U.S. 392, 401 (1988) (recognizing possible liability under Maryland law based in part on the government's voluntary undertaking "to provide care to a person who was visibly drunk and visibly armed").

While we have been unable to find a Massachusetts case squarely on point, our analysis is informed by the state courts' warm reception of applicable Restatement principles. Those principles counsel against finding a duty based on so fragile a connection as exists here. See Restatement §§ 315-319. Moreover, four former justices of the Massachusetts Supreme Judicial Court (which, at full strength, numbers seven justices) have agreed that "[i]n the absence of special assurances having been given, the law imposes no duty on a private individual carefully to extinguish a fire he did not cause, or carefully to remove an intoxicated motorist from the highway whose intoxication or presence on the highway he did not bring about." Jean W., 610 N.E.2d at 312 (Liacos, C.J., concurring) (alternation in original) (quoting Cyran v. Town of Ware, 597 N.E.2d 1352, 1360 (Mass. 1992) (O'Connor, J., concurring, with whom Nolan and Lynch, JJ., joined)). It would seem to follow that a private individual who has refrained from giving any assurances has no legal duty to keep the public safe from a felon with whom he has had only the briefest contact.

-14-

No more need be said. We are confident, given these telltales and given the absence of any allegation that special assurances were offered, that Anderson, if a purely private actor, would not have acquired a duty to control Sampson merely by his reception of Sampson's brief telephone call. After all, Anderson took no action aimed at taking charge of Sampson. His failure to act, while lamentable, is too amorphous a foundation on which to erect a duty to control.[8] Cf. Bergmann v. United States, 689 F.2d 789, 796 (8th Cir. 1982) (concluding that, under Restatement § 319, the government did not "take charge" of a federally protected witness and, thus, had no duty to control the witness's conduct).

The principal cases on which the co-administrators rely do not mitigate the force of this reasoning. None of them involves a fact pattern that is substantially similar (or even fairly analogous) to the fact pattern here. By the same token, none of them evinces a connection between the parties as ephemeral as Anderson's (and the FBI's) fleeting connection with Sampson. See, e.g., Marin v. United States, 814 F. Supp. 1468, 1485 (E.D. Wash. 1992) (finding a special relationship between INS agents and a

---

[8]Because there is no special relationship here, we need not address the secondary issue of foreseeability. See Restatement § 319 (noting that the duty assumed by "one who takes charge of a third person" only accrues when "he knows or should know [that the person is] likely to cause bodily harm to others if not controlled"); see also Jean W., 610 N.E.2d at 315 (Liacos, C.J., concurring) (acknowledging that a duty arising from a special relationship under Restatement § 320 would only inure to the benefit of foreseeable victims).

detainee whom they released from custody to act as an informant); Williams v. United States, 450 F. Supp. 1040, 1044 (D.S.D. 1978) (concluding that V.A. hospital, knowing of patient's propensity for violence and having agreed to notify local authorities upon his release, undertook a duty that it breached when it discharged the patient without notice and he committed a murder a day later). These cases depend upon the presence of numerous facts that are foreign to the record in the case at bar: among these disparities, the most salient distinction is that, unlike the detained alien in Marin or the hospital patient in Williams, the instrument of harm here (Sampson) was never in the government's charge.[9]

In a last-ditch effort to stem the tide, the co-administrators propose that the issue of whether government actors "took charge" of a third person must be decided by a trier of fact. That proposition is incorrect. When the raw facts are undisputed, "[t]he existence of a duty is typically a question of law, not of fact." Carrier, 721 F.2d at 868. This case fits within that mold. We have taken the well-pleaded facts in the light most favorable to the co-administrators — and those facts, even if entirely true, do not show the existence of an actionable duty. No more is exigible

_____

[9]The co-administrators also cite Estate of Davis v. United States, 340 F. Supp. 2d 79 (D. Mass. 2004). The court there found that a special relationship between the government and its informants created "a duty owed to the general public to control them." Id. at 93. That finding is context-specific, and the relationship between the FBI and Sampson is far too attenuated to evoke a fair comparison.

to sustain a dismissal of the FTCA counts.  See 28 U.S.C. §
1346(b).

### C.  **The Section 1983 Claims**.

The co-administrators also contest the dismissal of their
section 1983 claims against the federal defendants.  That statute's
reach is limited to "person[s] who [act] under color of any
statute, ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia."  42 U.S.C. § 1983.  Thus,
to plead a viable section 1983 claim, a complaint must allege
action under color of state law.  See, e.g., Redondo-Borges, 421
F.3d at 7; Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir.
2001).  Given the nature of this requirement, a section 1983 claim
ordinarily will not lie against a federal actor.  See District of
Columbia v. Carter, 409 U.S. 418, 424-25 (1973) (recognizing that
"actions of the Federal Government and its officers are at least
facially exempt from [section 1983's] proscriptions"); Redondo-
Borges, 421 F.3d at 6 (similar).

Here, the relevant counts of the amended complaint assign
fault to federal actors functioning as such.  They contain no hint
of any tortious activity under color of state authority, nor do
they limn any extraordinary circumstances that might implicate the
federal defendants in state action.  Cf. Hampton v. Hanrahan, 600
F.2d 600, 623 (7th Cir. 1979) (explaining that a section 1983 claim
might lie against federal officers who "are engaged in a conspiracy

-17-

with state officials to deprive [the plaintiff's] constitutional rights").

When pressed, the co-administrators confess that the amended complaint fails to allege any action by the federal defendants under color of state law. They asseverate, however, that the district court should have deferred ruling on their section 1983 claims until pretrial discovery had run its course. That asseveration puts the cart before the horse.

When evaluating a motion to dismiss, the trial court must decide in the first instance whether the plaintiff is entitled to undertake discovery at all. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). To reach this plateau, a plaintiff must carry an entry-level burden: he must sketch, at least in outline form, the rudiments of a viable claim. See Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004). If he succeeds in that endeavor, discovery should be allowed to give him an opportunity to put some flesh on the bare bones of that claim. But if he does not succeed in carrying his entry-level burden, that is the end of the matter. The purpose of pretrial discovery is not to allow a plaintiff to rummage about in search of a hitherto unexplained cause of action. See Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 597 (1st Cir. 1980).

In this instance, the co-administrators have not proffered even the most hazy outline of a viable section 1983 claim. Their attempts to do so, as framed in their amended complaint, fail to meet even the most abecedarian notice pleading requirements. See Fed. R. Civ. P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). They are, therefore, not entitled to discovery. See Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 39 (1st Cir. 1992) (noting that "it is only after stating a valid claim that a plaintiff can insist upon a right to discovery"). In the last analysis, plaintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have.

Even were we to recharacterize the co-administrators' constitutional claims under the framework crafted in Bivens v. Six Unknown Named Agents of FBN, 403 U.S. 388 (1971), and thus sidestep the "under color of state law" requirement, the claims still would succumb to the federal defendants' motion. The Bivens doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law. See id. at 397. But the availability of that doctrine does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal

officers sued in their official capacities.  See <u>Ruiz Rivera</u> v.
<u>Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000).

Here, the co-administrators sued Mueller only in his
official capacity.  And although they originally named Anderson as
both an individual-capacity and an official-capacity defendant, the
district court, on the parties' joint motion early in the case,
dismissed all claims against Anderson in his individual capacity.
Having joined in the motion to dismiss, the co-administrators
cannot now appeal the resultant order.  See <u>BIW Deceived</u> v. <u>Local</u>
<u>S6, Indus. Union of Marine & Shipbuilding Workers</u>, 132 F.3d 824,
828 (1st Cir. 1997) (recognizing general rule that a party who
unreservedly consents to a judgment waives any right to appeal that
judgment).  Consequently, no cognizable <u>Bivens</u> claims lurk in the
penumbra of the amended complaint.

## III.  CONCLUSION

To recapitulate, we hold (i) that the district court
lacked subject-matter jurisdiction to hear the co-administrators'
FTCA claims,[10] and (ii) that the co-administrators have failed to
state any cognizable cause of action under 42 U.S.C. § 1983.
Accordingly, the lower court properly dismissed all the claims
against the federal defendants (including the punitive damages

---

[10]Since we affirm the dismissal of the FTCA counts on private-
person liability grounds, we need not address the district court's
alternative holding anent the discretionary function exception.
<u>See</u> <u>McCloskey</u>, 385 F. Supp. 2d at 79-81.

claim, which has no independent footing).  In so holding, we do not intend to place our imprimatur upon Anderson's failures.  We are, however, bound both by the terms of the FTCA, which, like all waivers of sovereign immunity, "must not be enlarged beyond such boundaries as its language plainly requires," United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994), and by the circumscriptions of section 1983.

We need go no further.  Without any federal claims left in the case, the lower court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims asserted against Sampson.  See 28 U.S.C. § 1367(c)(3); see also Martinez v. Colon, 54 F.3d 980, 990-91 (1st Cir. 1995).

**Affirmed**.