# United States Court of Appeals
## For the First Circuit

No. 09-2566

SAN GERÓNIMO CARIBE PROJECT, INC.,

Plaintiff, Appellant,

v.

HON. ANÍBAL ACEVEDO-VILÁ, in his individual and personal
capacity; HON. ROBERTO SÁNCHEZ-RAMOS, in his individual
and personal capacity; LUIS A. VÉLEZ-ROCHE, P.E., in his
individual and personal capacity; JOHN DOE; JANE DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Smith,[*] District Judge.

Richard H. Fallon, Jr., with whom John M. García, García &
Fernández, Orlando Fernández, and Orlando Fernández Law Offices,
were on brief for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, with whom Irene S. Soroeta-Kodesh, Solicitor
General, Leticia Casalduc-Rabell, Deputy Solicitor General, and
Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief for
appellees.

June 17, 2011

---

[*] Of the District of Rhode Island, sitting by designation.

**TORRUELLA**, Circuit Judge; **LIPEZ**, Circuit Judge; **and**
**SMITH**, District Judge. This appeal stems from a dispute involving
the Paseo Caribe Project in San Juan, Puerto Rico. The controversy
regarding the project concerned whether some of the lands on which
the project was being built were part of the public domain and had
therefore been improperly sold to a private party. Many opposed
the construction of the project because it obstructed access to the
San Gerónimo del Boquerón Fort.

The controversy prompted a legislative investigation and
an opinion from the Puerto Rico Secretary of Justice finding that
the lands were part of the public domain.[1] Op. Sec. Jus. No. 07-
230-B of Dec. 11, 2007. As will be presently recounted, this was
not the first opinion to be issued by a Secretary of Justice of the
Commonwealth with respect to this matter. Relying on the Secretary
of Justice's opinion, the Regulations and Permits Administration of
Puerto Rico ("ARPE," for its Spanish acronym) issued a resolution
and order holding all permits for the Paseo Caribe Project in
abeyance and ceasing construction for an initial period of sixty
days. The ARPE issued this resolution and order without providing

---

[1] Under Puerto Rico law, the opinions that the Puerto Rico
Secretary of Justice issues are advisory in nature at the internal
level of the executive agencies. See San Gerónimo Caribe Project,
Inc. v. Regulations & Permits Admin., 2008 TSPR 130, 2008 PR Sup.
LEXIS 135, at *35 (P.R. July 31, 2008) (certified translation
provided by the parties). Although the Secretary of Justice's
opinions do not bind the Puerto Rico courts, "they do have a great
convincing value." Id. at *34.

the project's developer, San Gerónimo Caribe Project, Inc. ("San Gerónimo"), with a meaningful hearing. After successful appeals in the Puerto Rico courts, San Gerónimo filed a complaint in the United States District Court for the District of Puerto Rico under 42 U.S.C. § 1983 due to the defendants' alleged violation of, inter alia, its procedural due process rights. San Gerónimo also included a Puerto Rico law tort claim under Article 1802 of the Puerto Rico Civil Code. The district court dismissed the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). We affirm the dismissal of San Gerónimo's complaint.

## I. Facts and Procedural History

Because the district court dismissed the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), we view the well-pleaded facts in the light most favorable to San Gerónimo and draw all reasonable inferences in its favor. IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 443 (1st Cir. 2010); Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

### A. The Paseo Caribe Project and the Decisions of the Puerto Rico Courts

On January 12, 2000, the Puerto Rico Planning Board[2] approved a proposal from San Gerónimo to develop the Paseo Caribe

---

[2] Among its principal functions, "[t]he Puerto Rico Planning Board issues rules for granting controlled access permits, P.R. Laws Ann. tit. 23, §§ 64, 64e, and [the ARPE] administers the Board's permitting regulations . . . ." Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Sagardía De Jesús, 634 F.3d 3, 7 n.4 (1st Cir. 2011), reh'g denied, 638 F.3d 81 (1st Cir. 2011).

Project.  The Paseo Caribe Project is a mixed residential, commercial and tourism project located in San Juan, Puerto Rico. On July 21, 2000, San Gerónimo purchased two parcels of land from Hilton International of Puerto Rico, Inc. ("Hilton International"). Shortly before, Hilton International had purchased the two parcels from the Hotel Development Corporation, a subsidiary of the Tourism Company of Puerto Rico.

In 2002, at the request of the Secretary of the Department of Natural Resources of Puerto Rico, the Department of Justice of Puerto Rico issued an opinion (the "2002 Department of Justice Opinion"), Op. Sec. Jus., No. 02-55-B of Oct. 28, 2002, concluding that the parcels sold in connection with the Paseo Caribe Project were not part of the public domain and could be sold without legislative action, despite the fact that the parcels were gained from the sea.

The ARPE issued all necessary permits for the development of the Paseo Caribe Project.  San Gerónimo began construction in August 2002 and by 2007, it had invested over two hundred million dollars.  As previously alluded to, in 2007, when part of the project was nearing completion, the Paseo Caribe Project became the target of negative publicity.  This negative publicity was due to a small but persistent group of concerned citizens who claimed that the Paseo Caribe Project obstructed access to the San Gerónimo del Boquerón Fort.  The group picketed the site and attempted to

-4-

paralyze construction. This vocal group of protestors established a significant political constituency and received attention from the press.

The Puerto Rico legislature commenced an investigation and, in connection therewith, sought the advice of the Secretary of Justice, Roberto J. Sánchez Ramos, regarding public access to the San Gerónimo del Boquerón Fort. On December 11, 2007, Sánchez Ramos issued an opinion (the "2007 Department of Justice Opinion"), Op. Sec. Jus. No. 07-230-B of Dec. 11, 2007, in which he reversed the 2002 Department of Justice Opinion and concluded that San Gerónimo lacked valid title to some of the land on which the Paseo Caribe Project was being built. The 2007 Department of Justice Opinion stated that the land at issue was gained from the sea and therefore belonged to the public domain.[3] As such, the land could not have been sold to a private party without legislative action. The 2007 Department of Justice Opinion recommended that state agencies reevaluate all permits granted in connection with the Paseo Caribe Project.

The next day, December 12, 2007, the Governor of Puerto Rico, Aníbal Acevedo Vilá, met with his cabinet. After this meeting, without granting San Gerónimo an opportunity for a

---

[3] The 2007 Department of Justice Opinion acknowledged that the Secretary of Justice had no authority to determine the legality of San Gerónimo's title to the property and that this was an issue for the Puerto Rico courts to decide. Op. Sec. Jus. No. 07-230-B of Dec. 11, 2007, at *180.

-5-

hearing, Acevedo Vilá publicly ordered the pertinent administrative agencies to suspend all permits for the Paseo Caribe Project and to freeze all construction for an initial period of sixty days.

On December 14, 2007, the administrator of the ARPE, Luis A. Vélez Roche, invoked Puerto Rico's emergency adjudicatory procedure,[4] P.R. Laws Ann. tit. 3, § 2167, and issued an order to show cause why the Paseo Caribe Project permits should not be held in abeyance and the construction suspended for sixty days in accordance with the 2007 Department of Justice Opinion. The ARPE scheduled a hearing for December 20, 2007.

Prior to the administrative hearing, San Gerónimo sought to quiet title in the lands at issue. Therefore, on December 19, 2007, San Gerónimo filed a complaint for declaratory judgment in the Puerto Rico Court of First Instance, requesting that the court enter judgment declaring that the parcels of land at issue are not part of the public domain and that title lawfully rests with San Gerónimo.

---

[4] Under Puerto Rico law, the ARPE is generally required to follow the ordinary adjudicative process before revoking a permit; this process requires a hearing that satisfies the requirements listed in the Uniform Administrative Procedure Act. P.R. Laws Ann. tit. 3, §§ 2151(a), 2152, 2157-2159, 2161, 2163-2164. Puerto Rico law does, however, provide the ARPE with the option of an immediate action procedure that allows it to temporarily sidestep the ordinary adjudicative procedures. P.R. Laws Ann. tit. 3, § 2167. Even when an agency appropriately uses the immediate action procedure, the statute provides that it "shall promptly proceed to complete any procedure that has been required unless there is imminent danger." P.R. Laws Ann. tit. 3, § 2167(e).

San Gerónimo appeared at the December 20, 2007 hearing. The ARPE panel consisted of two hearing examiners, one of whom stated that "the nature of the hearing [was] not adversarial" and that the purpose of the hearing was for the ARPE to "gather information . . . so that [the ARPE] may make a determination regarding the Stay Order of the construction[]" on the Paseo Caribe Project. San Gerónimo presented a motion to dismiss and provided evidence of its valid title along with a copy of its complaint for declaratory judgment filed with the Puerto Rico Court of First Instance. San Gerónimo argued that the Department of Justice and the ARPE lacked jurisdiction to adjudicate the title over the property. The ARPE denied the motion to dismiss. The presiding officers stated that the issue of the validity of San Gerónimo's title would not be considered during the hearing. The presiding officer specifically stated that the ARPE's intent was to stop all construction until the issue of San Gerónimo's title was resolved.

During the hearing, San Gerónimo also claimed that its due process rights were being violated and that notice for the hearing had been insufficient. The ARPE did not introduce any evidence against San Gerónimo and did not charge it with any violations. The 2007 Department of Justice Opinion was not introduced into the record of the hearing.

On December 27, 2007, defendant Vélez Roche, administrator of the ARPE, issued a resolution and order holding

the permits in abeyance and ceasing construction for a period of sixty days, with a proviso that the ARPE could extend that period if such extension was "in the public interest." The ARPE's resolution did not address San Gerónimo's proprietary interest or that of the owners of the completed apartments.

San Gerónimo appealed the ARPE's order to the Puerto Rico Court of Appeals. On February 6, 2008, the Puerto Rico Court of Appeals concluded that the ARPE had violated San Gerónimo's due process rights as protected under the Puerto Rico Constitution. San Gerónimo Caribe Project, Inc. v. ARPE, case # KLRA2008-00010, 2008 PR App. LEXIS 777 (P.R. Cir. Feb. 6, 2008) (certified translation provided by the parties). The court recognized San Gerónimo's proprietary interest in the permits and its claim of proprietary interest in the land. Id. at *52.[5] Therefore, the court ordered the ARPE to hold an evidentiary hearing. Id. at *61. The court did not, however, lift the stay on the construction. See id. The ARPE failed to hold the evidentiary hearing that the Puerto Rico Court of Appeals had ordered.

On February 8, 2008, the Court of First Instance entered a judgment upholding the validity of San Gerónimo's title to the land upon which it was building the Paseo Caribe Project. San

---

[5] Where no official translation of a Puerto Rico court decision is available, all pinpoint citations used herein refer to the certified translation the appellant submitted. See App. to Br. of Appellant, at 329-89, 394-509, San Gerónimo Caribe Project, Inc. v. Acevedo Vilá, No. 09-2566 (1st Cir. argued Oct. 4, 2010).

-8-

Gerónimo Caribe Project, Inc. v. E.L.A. de P.R., No. K2AC2007-2577 (Ct. of First Instance, Super. Part of San Juan, filed Feb. 8, 2008). The judgment held that the 2007 Department of Justice Opinion lacked legal foundation and that the suspension of San Gerónimo's permits due to doubts about the validity of its title to the land was indefensible.

On February 15, 2008, San Gerónimo filed a petition for certiorari in the Puerto Rico Supreme Court requesting review of the Court of Appeals' decision that had ordered the ARPE to hold an evidentiary hearing but failed to lift the stay on the construction. On February 25, 2008, the ARPE extended the initial suspension of San Gerónimo's building permits for an additional sixty days without holding the evidentiary hearing that the Puerto Rico Court of Appeals had ordered.

On February 28, 2008, the Puerto Rico Supreme Court issued a writ of certiorari and granted San Gerónimo's motion for a stay of the ARPE's suspension orders pending the issuance of its decision. Construction resumed. The Puerto Rico Supreme Court issued its opinion regarding this matter on July 31, 2008. San Gerónimo Caribe Project, Inc. v. Regulations & Permits Admin., 2008 TSPR 130, 2008 PR Sup. LEXIS 135 (P.R. July 31, 2008) (certified translation provided by the parties).[6] The Puerto Rico Supreme

---

[6] This decision was not unanimous as it was issued by a vote of three to two. Puerto Rico Supreme Court Justices Fiol Matta and Anabelle Rodríguez Rodríguez filed dissenting opinions.

Court held that the ARPE violated San Gerónimo's due process rights under the Puerto Rico Constitution by deviating from the ordinary procedure and failing to hold a meaningful hearing before depriving San Gerónimo of its permits. Id. at *41. The court recognized that, although Puerto Rico law provides for an emergency adjudicatory procedure, id. at *25, the ARPE's justification for circumventing the ordinary process was "very far from the extraordinary circumstances that would allow the use of the immediate action procedure contemplated in [Puerto Rico's Uniform Administrative Procedure Act--the] L.P.A.U.," id. at *30 (emphasis added).[7] The Court also concluded that the ARPE erred in suspending San Gerónimo's permits based on the 2007 Department of Justice Opinion as the opinion lacked legal effect and neither the Secretary of Justice nor the ARPE had authority to decide the issue of title to the property. Id. at *41-42. The Court vacated the ARPE's order suspending the permits and ordered it to suspend all

[7] The Puerto Rico Supreme Court added that the questions that the 2007 Department of Justice Opinion raised regarding the ownership of the lands at issue "[did] not present a situation where the summary action of the State is required to avoid imminent damage." San Gerónimo Caribe Project, Inc., 2008 TSPR 130 at *30. "[W]e cannot support the thesis by the State to the effect[] that the incidents and protests occurred in the mentioned project were sufficient to justify the summary intervention by ARPE. . . . Without a doubt, the degree of unrest that the same may have generated, would not equal the instances where the compliance with imminent danger to public health, safety and welfare have been acknowledged, or that of an extraordinary situation that would require the immediate action by the State." Id. at *31.

proceedings to set aside San Gerónimo's permits based on the 2007 Department of Justice Opinion. Id. at *42-43.

In a separate decision also dated July 31, 2008, the Supreme Court of Puerto Rico affirmed the judgment of the Court of First Instance declaring that San Gerónimo had valid title to the land underlying the Paseo Caribe Project. San Gerónimo Caribe Project, Inc. v. Estado Libre Asociado de P.R., 2008 TSPR 129, 2008 PR Sup. LEXIS 142 (certified translation of the majority opinion provided by the parties).[8]

### B. Procedural Posture

On October 24, 2008, San Gerónimo filed a complaint in the United States District Court for the District of Puerto Rico under 42 U.S.C. § 1983 due to defendants' alleged violation of its due process rights, its substantive due process rights and its equal protection rights, as guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. San Gerónimo also included a Puerto Rico law tort claim under Article 1802 of the Puerto Rico Civil Code. The complaint requested damages of thirty-eight million dollars due to the seventy-day delay in construction that the defendants allegedly caused.

---

[8] This decision was by a vote of four to one. Puerto Rico Supreme Court Justice Fiol Matta dissented in part and concurred in part. Justice Fiol Matta's dissent was strong and concluded that some of the lands at issue were in fact part of the public domain.

-11-

On December 23, 2008, the defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction with respect to the pendent jurisdiction claims. San Gerónimo filed its response on February 5, 2009.

The motion to dismiss was referred to a magistrate judge, who issued a report and recommendation on August 3, 2009. The magistrate judge advised in favor of the dismissal of the complaint in its entirety, reasoning, inter alia, that San Gerónimo's procedural due process claims were barred by the Parratt-Hudson doctrine. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). On August 10, 2009, San Gerónimo filed its opposition to the magistrate judge's report and recommendation. On September 30, 2009, the district court issued an opinion and order adopting in toto the magistrate judge's report and recommendation, adding that San Gerónimo's claims are also subject to dismissal under the doctrine of qualified immunity. The district court entered judgment in favor of defendants, dismissing all federal claims with prejudice and dismissing the pendent state law claims without prejudice.

On October 28, 2009, San Gerónimo filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. **Discussion**

### A. **Standard of Review**

The district court dismissed San Gerónimo's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court educed its ruling from different parts of Federal Rule of Civil Procedure 12(b); under either subsection, our review of the court's ruling is de novo. Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010); McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006). We accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in its favor. McCloskey, 466 F.3d at 266. We may affirm a court's dismissal pursuant to Rules 12(b)(1) and 12(b)(6) on "any basis made apparent from the record." Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008); Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007). We review the district court's determination that the defendants were entitled to qualified immunity de novo. Meléndez-García v. Sánchez, 629 F.3d 25, 35 (1st Cir. 2010).

### B. **Procedural Due Process**

A plaintiff seeking to establish a procedural due process claim under 42 U.S.C. § 1983 must allege that the defendants deprived it of a property interest while acting under color of state law and without providing constitutionally adequate process. Maymí v. P.R. Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008). As a

-13-

preliminary matter, the plaintiff must claim the deprivation of a property interest recognized under state law. SFW Arecibo, Ltd. v. Rodríquez, 415 F.3d 135, 139 (1st Cir. 2005). San Gerónimo has done that here. See San Gerónimo Caribe Project, Inc., 2008 TSPR 130, at *19-20 (holding that San Gerónimo's suspended building permits constituted a property interest under Puerto Rico law). But a further showing is required. As the Supreme Court has explained, "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990).

What constitutes "due process of law" depends upon the facts of each case. See id. at 127 ("Due process . . . is a flexible concept that varies with the particular situation."). Typically, due process requires that an opportunity for a hearing be provided prior to the deprivation. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). In this appeal, the defendants do not dispute that the hearing the ARPE provided prior to suspension of San Gerónimo's building permits was inadequate to satisfy the requirements of due process.[9] Although predeprivation

---

[9] The Puerto Rico Supreme Court held that the predeprivation hearing provided by the defendants deviated from the process ordinarily required under the Puerto Rico Constitution to "satisfy the minimum demands of due process, as for instance, the opportunity of being heard, the right to cross-examine and the

-14-

process may be the norm, however, "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process" may render a postdeprivation remedy constitutionally adequate in some circumstances. Parratt, 451 U.S. at 539. The defendants claim that this is such a case, citing the so-called Parratt-Hudson doctrine. After close examination of the merits of their contention, we disagree.

### 1. The Parratt-Hudson Doctrine

The core principle of the Parratt-Hudson doctrine is simple to state, though its application in the individual case can be elusive. Parratt-Hudson provides that, where "a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, . . . the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state." Chmielinski v. Massachusetts, 513 F.3d 309, 315 (1st Cir. 2008) (quoting O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000)) (internal quotation mark omitted). The doctrine takes its name from a pair of Supreme Court decisions involving due process claims by inmates against prison officials for the loss of personal property -- in one case, property negligently misplaced in the internal mail system, and in the other, property intentionally

---

right to examine the evidence filed by the other party." San Gerónimo Caribe Project, Inc., 2008 TSPR, 130 at *20, *41. Because defendants do not contest the issue, we accept the proposition that the predeprivation procedures did not by themselves satisfy due process.

-15-

destroyed by officials during a "shakedown" search.  See Hudson, 468 U.S. 517; Parratt, 451 U.S. 527.  In each case, the Court held that the availability of state tort-law remedies after the loss was sufficient to satisfy the Due Process Clause.  Hudson, 468 U.S. at 531-33; Parratt, 451 U.S. at 539-41.  The rationale was one of impracticability: where a loss occurs "as a result of a random and unauthorized act by a state employee," the State "cannot predict precisely when the loss will occur" and thus it "is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place."  Parratt, 451 U.S. at 541.

We have cautioned that, "[b]efore invoking the Parratt-Hudson doctrine, . . . courts must give a hard look at allegations that conduct is 'random and unauthorized.'"  Chmielinski, 513 F.3d at 315.  Where a state official's action takes the form of classic tort-like behavior, as was the case in both Parratt and Hudson, applying the concepts of "random and unauthorized" conduct poses little difficulty.  That conceptual clarity begins to dissipate, however, in situations where more formal, traditional government action is at issue -- for example, in the suspension of building permits.  The Supreme Court has twice attempted to clarify the application and limits of Parratt-Hudson in these sorts of circumstances.

First, in Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982), the Court held that the doctrine has no application where

-16-

a loss is the result of an "established state procedure," even if due in part to negligent official conduct. At issue in Logan was an Illinois law that predicated a claimant's right to pursue an employment discrimination claim on a state commission's action on the claim (specifically, convening a factfinding conference) within a prescribed time period. Id. at 424-25. In Logan, the law had barred the plaintiff from pursuing a disability claim due to the state commission's inadvertent failure to act on his claim in the allotted time. Id. at 426-27. The defendant argued that the claimed loss was of the "same type of essentially negligent deprivation" at issue in Parratt, and thus state tort remedies should be deemed to satisfy due process. Id. at 435. The Court disagreed, explaining that "Parratt was not designed to reach" the situation where "it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference -- whether the Commission's action is taken through negligence, maliciousness, or otherwise." Id. at 436; see also Hudson, 468 U.S. at 532 ("[P]ostdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action.").

Second, in Zinermon, 494 U.S. at 135, relied on by the plaintiff here, the Court addressed the situation where a

-17-

deprivation of a liberty or property interest occurs under the auspices of a state law that gives government officials "broad power and little guidance . . . ." The case involved a due process claim by a former psychiatric patient who was admitted for long-term inpatient mental health treatment under a "voluntary" protocol when he clearly was not competent to voluntarily consent to admission. Id. at 123-24. Because the rationale underlying Zinermon is both somewhat abstruse and of central importance to this appeal, the decision bears more thorough discussion.

## 2. Zinermon v. Burch

Zinermon was set against a background of state law affording hospital staff the discretion to choose from two separate protocols for long-term admission for mental health treatment. The first was an involuntary protocol, which granted a patient "a right to notice, a judicial hearing, appointed counsel, access to medical records and personnel, and an independent examination." Id. at 123. The second was a voluntary protocol, applicable only where an adult patient showing evidence of mental illness gave "express and informed consent" to admission. Id. The defendant hospital officials admitted the plaintiff under the latter, voluntary protocol despite the fact that he was heavily medicated and showing signs of disorientation, psychosis, hallucinations, and paranoia around the time he signed the hospital's consent form.

Following his release, the plaintiff filed suit for a violation of procedural due process. Of particular note, the plaintiff expressly "disavowed any challenge to the statutes themselves and restricted his claim to the contention that petitioners' failure to provide constitutionally adequate safeguards in his case violated his due process rights." Id. at 117. Indeed, the Court found that the plaintiff "apparently concede[d] that, if Florida's statutes were strictly complied with, no deprivation of liberty without due process would occur." Id. at 117 n.3. Sharing the plaintiff's view that the officials' actions contravened the procedures required by state law, the district court concluded that the conduct at issue was "unauthorized" and dismissed the suit under Parratt-Hudson. On appeal, the plurality of an en banc panel of the 11th Circuit reversed, finding the Parratt-Hudson doctrine inapplicable because the state could have provided additional predeprivation remedies.

The Supreme Court agreed, distinguishing Parratt and Hudson on three bases. First, it noted that the deprivation of liberty in Zinermon was not "unpredictable," and that "[a]ny erroneous deprivation will occur, if at all, at a specific, predictable point in the admission process -- when the patient is given admission forms to sign." Zinermon, 494 U.S. at 136. Second, the Court found that, unlike in Parratt and Hudson, implementing a predeprivation process was not impossible, as the

-19-

state could have provided additional administrative procedures that would have "limited and guided [the defendants'] powers to admit patients" by ensuring that hospital officials correctly chose between the voluntary and involuntary admission protocols. Id. at 137. Third, the Court found that the defendants could not rightly characterize their conduct as "unauthorized" in the sense that word was used in Parratt and Hudson, because "[t]he State delegated to them the power and authority to effect the very deprivation complained of . . . ." Id. at 138. In thus construing the term "unauthorized," the Zinermon majority expressly rejected the view that the Parratt-Hudson doctrine applies "in every case where a deprivation is caused by an unauthorized . . . departure from established practices." Id. at 138 n.20 (internal quotation marks omitted).[10]

More fundamentally, the Court emphasized that the state "chose to delegate to [hospital officials] a broad power to admit patients to [mental hospitals], i.e., to effect what, in the absence of informed consent, is a substantial deprivation of liberty." Id. at 135. The Court explained that it might be

_____

[10] We note that this understanding of "unauthorized" appears to be in direct tension with several of our precedents, which can be read to suggest that a departure from established state procedures by itself renders an official action "unauthorized" under Parratt and Hudson. See, e.g., SFW Arecibo, Ltd., 415 F.3d at 139; PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 31 (1st Cir. 1991). This point becomes critical in our qualified immunity analysis. See infra Part II.C.

constitutional to provide such broad discretion with little guidance on its exercise, but "when those officials fail to provide constitutionally required procedural safeguards to a person whom they deprive of liberty, the state officials cannot then escape liability by invoking Parratt and Hudson." Id.

### 3. Application to San Gerónimo's Due Process Claim

Turning to the facts of this case, we conclude that the rationale of Zinermon is squarely applicable, and thus the postdeprivation remedies available to San Gerónimo could not be sufficient to satisfy the Due Process Clause.

Though presenting the deprivation of a property rather than liberty interest, the problem at the heart of this case is the same as in Zinermon: state officials, imbued with the broad discretion to effect deprivation of property interests, erroneously chose to deprive the plaintiff of its property under a protocol lacking the procedural protections required by due process. Commonwealth law provided the ARPE with two options for the suspension of San Gerónimo's construction permits: (1) an ordinary adjudicative process involving a formal hearing and other procedural safeguards, see P.R. Laws Ann. tit. 3, §§ 2151(a), 2152, 2157-59, 2161, 2163-64, or (2) an "Emergency Adjudicatory Procedure", see id. § 2167. The latter was available "in any situation in which there is imminent danger to the public health, safety and welfare or which requires immediate action by the

-21-

agency."  P.R. Laws Ann. tit. 3, § 2167(a).  The ARPE chose this

"emergency" procedure, explaining:

> Pursuant to [§ 2167], the agencies may hold
> emergency adjudicatory procedures of an
> expeditious nature when there is an imminent
> danger to the public health, safety and
> welfare or which require immediate action by
> the agency.  Some questions have arisen as to
> the ownership of the land where the Proyecto
> Paseo Caribe development is located after the
> Opinion issued by the Secretary of Justice.
> There have also been several incidents that
> could affect the safety of the employees
> working in this project, and of the citizens
> who have been holding demonstrations near said
> land.  The conclusion in the aforementioned
> Opinion that some of the land occupied by the
> Proyecto Paseo Caribe development is public
> land, has evidenced the existence of a great
> public interest in the reevaluation of the
> endorsements of said project to safeguard the
> rights of both the proponents and the
> developers and the resources of the People of
> Puerto Rico.

In re San Gerónimo Development, Inc., Order to Show Cause, at *2

(ARPE Dec. 14, 2007) (certified translation provided by the

parties).

As in Zinermon, there is no question that the defendants

erred in their choice of the Emergency Adjudicatory Procedure.  The

Puerto Rico Supreme Court determined that the justification relied

upon in the ARPE's order was "very far from the extraordinary

circumstances that would allow the use of the immediate action

procedure . . . ."  San Gerónimo Caribe Project, Inc., 2008 TSPR

130, at *30.  If Puerto Rico's statutes had been "strictly complied

with," the ARPE would have followed normal adjudicatory procedures

-22-

and "no deprivation of [property] without due process would [have] occur[red]." Zinermon, 494 U.S. at 117 n.3.

Though the defendants may have departed from state law protocols in suspending San Gerónimo's permits via the emergency procedure, we conclude that their action is distinguishable, on the three bases Zinermon cites, from the sort of genuinely "random and unauthorized" conduct subject to Parratt and Hudson. First, as in Zinermon, the point at which a deprivation of property would be effected is perfectly predictable -- it was at the point where an agency is choosing between regular and emergency procedures. See Zinermon, 494 U.S. at 136. Thus, it cannot be said that the deprivation of property without sufficient process was truly "random."

Second, unlike Parratt and Hudson, this was not a situation where "the very nature of the deprivation made predeprivation process 'impossible.'" Id. at 137 (quoting Parratt, 451 U.S. at 541). To the contrary, it is plain that, as in Zinermon, additional processes could have been implemented to "limit[] and guide[]" the defendants' power to effect deprivations of property under the emergency adjudicatory procedure. Id. The emergency procedures statute fails to offer any meaningful guidance on what types of circumstances will justify emergency action, stating only that such circumstances include "any situation in which there is imminent danger to the public health, safety and

-23-

welfare or which requires immediate action by the agency." P.R. Laws Ann. tit. 3, § 2167(a). There is thus significant room for guidance or additional procedures for identifying when emergency adjudicatory procedures can permissibly be employed.

Third, with regard to whether the defendants' actions were "authorized," it is undisputed that the ARPE purported to act under the authority of § 2167(a), which does indeed permit deprivation of property interests without a hearing in exigent circumstances. Defendants suggest that their actions were "unauthorized" because they did not follow the procedures ordinarily required by Puerto Rico law. However, Zinermon teaches that this sort of "unauthorized . . . departure from established practices" is not "'unauthorized' in the sense the term is used in Parratt and Hudson." Zinermon, 494 U.S. at 138 & n.20. Rather, as in Zinermon, "[t]he deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a deprivation of constitutional rights by an official's abuse of his position." Id. at 138 (citation omitted) (internal quotation marks and alterations omitted). And, in this case, as in Zinermon, "[t]he State delegated to [the defendants] the power and authority to effect the very deprivation complained of . . . ." Id.

In short, this case does not match the mold cast by Parratt and Hudson. This was not a matter of random and

-24-

unauthorized action, but instead of predictable overreaching by government officials given broad discretion to choose the manner by which property interests might be deprived. As such, postdeprivation remedies were not sufficient to meet the requirements of due process here. San Gerónimo has made out a valid procedural due process claim.

### C. Qualified Immunity

Qualified immunity shields government officials from personal liability for damages arising from actions taken while performing discretionary functions. Barton v. Clancy, 632 F.3d 9, 21 (1st Cir. 2011). It provides "an immunity from suit and not a mere defense to liability." Maldonado v. Fontánes, 568 F.3d 263, 268 (1st Cir. 2009). "Officials are entitled to qualified immunity unless (1) 'the facts that a plaintiff has alleged or shown make out a violation of a constitutional right' and (2) 'the right at issue was "clearly established" at the time of their alleged misconduct.'" Walden v. City of Providence, 596 F.3d 38, 52 (1st Cir. 2010) (brackets omitted) (quoting Pearson v. Callahan, 129 S. Ct. 808, 816 (2009)).

In this case, we have already held that plaintiffs have made out a due process claim, see supra Part II.B., and we assume here that they would prevail in proving a constitutional violation. Still, the second prong of qualified immunity--whether the right at issue was clearly established--remains to be addressed. "The

-25-

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds by Pearson, 129 S. Ct. at 818; accord Meléndez-García, 629 F.3d at 36. In other words, "[a] right is considered clearly established if viewed objectively at the time the defendant acted, he was on clear notice that what he was doing was unconstitutional." Decotiis v. Whittemore, 635 F.3d 22, 37 (1st Cir. 2011) (citations omitted) (quotation marks omitted). To demonstrate such clear notice, "the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with 'fair warning'" that his conduct was unlawful. Id. (citing Wilson v. Layne, 526 U.S. 603, 617 (1999)). Obviously, notice is measured by reference to the state of the law at the time defendants acted, not with the benefit of hindsight. See, e.g., Wilson, 526 U.S. at 616-18; Decotiis, 635 F.3d at 37-38 (both analyzing the state of the law at the time of defendants' actions).

In this case, we are not persuaded that the state of the law at the time of the incidents put defendants on clear notice that their actions violated due process. Specifically, we explain above that not every deviation from state law qualifies as "random and unauthorized" conduct within the meaning of Parratt and Hudson,

-26-

such that defendants are not required to provide predeprivation process. See supra at p. 20. Zinermon makes this conclusion unmistakably clear. See 494 U.S. at 138 n.20 ("Parratt and Hudson . . . do not stand for the proposition that in every case where a deprivation is caused by an unauthorized departure from established practices, state officials can escape § 1983 liability simply because the State provides tort remedies." (ellipsis omitted) (citations omitted) (internal quotation marks omitted)). Yet, as we have noted (and in fairness to the defendants), a number of our previous decisions might have been reasonably read to require this erroneous interpretation of Parratt and Hudson. See PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 31 (1st Cir. 1991) ("When a deprivation of property results from conduct of state officials violative of state law, the Supreme Court has held that failure to provide pre-deprivation process does not violate the Due Process Clause." (citing Parratt, 451 U.S. at 543)); accord SFW Arecibo, 415 F.3d at 139-40 (quoting PFZ Props., 928 F.2d at 31). These statements easily could have led the defendants to believe that they were not required to provide a meaningful predeprivation hearing and that, under Parratt and Hudson, providing postdeprivation remedies was all the process that was due. In view of this, it cannot fairly be said that the defendants were on clear notice that their failure to provide predeprivation process

-27-

violated the plaintiff's constitutional rights, and defendants thus are entitled to qualified immunity.

### III.  Conclusion

For the foregoing reasons, although the district court's holding that the plaintiff has failed to state a procedural due process claim was erroneous, the defendants are entitled to qualified immunity.  Therefore, the judgment of the district court is affirmed.

**AFFIRMED**.