LYNCH, Circuit Judge.
This case raises a question of first impression in our circuit: whether 8 U.S.C. § 1252(a) (2) (B) (ii), which precludes judicial review of the Attorney General’s and the Secretary of Homeland Security’s discretionary decisions under Title 8, Chapter 12, Subchapter II, applies to the revocation of visa petition approvals under 8 U.S.C. § 1155. Taking the same view as most other circuits, we conclude that it does and so judicial review is precluded.
Title 8, section 1252 of the U.S.Code precludes judicial review of discretionary decisions made by the Attorney General and the Secretary of Homeland Security under Title 8, Chapter 12, Subchapter II. 8 U.S.C. § 1252(a)(2)(B)(ii). Decisions made under that subchapter as to the revocation of previously approved visa petitions are made discretionary by statute. 8 U.S.C. § 1155. See Kucana v. Holder, 558 U.S. 233, 247, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010) (explaining that “Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General’s discretionary authority in the statute”). Because this statute is a clear expression of Congressional intent, we, like seven other circuits, conclude that Congress has barred judicial review.
I.
We confine our discussion of the facts to those necessary to frame the issue on ap *483 peal. On February 11, 2004, M & K Engineering, Inc. (“M & K”), through its owner and president Henry Bernardo, filed an Application for Employment Certification for Samuel Freitas to work as an Assistant Delivery Supervisor. After the Department of Labor granted the certification on October 11, 2006, M & K filed an 1-140 Immigrant Petition for Alien Worker (“visa petition”) for Freitas. The United States Citizenship and Immigration Services (“USCIS”) initially approved the visa petition on March 13, 2007.[1]
On September 22, 2010, the Director of the USCIS Texas Service Center issued a Notice- of Intent to Revoke (“NOIR”) the approval of the visa petition. The NOIR alleged that M & K was “trying to circumvent Immigration Laws by committing Fraud” and requested additional information and documents. M & K submitted additional evidence in response. On November 15, 2010, the Director of the USCIS Texas Service Center issued a decision revoking the approval of the visa petition because “the evidence does not indicate that the beneficiary had met the minimum experience requirements prior to the filing of either labor certification; plus, the new evidence contradicts evidence already on the record.” Bernardo, as owner of M & K, administratively appealed the revocation decision to the USCIS Administrative Appeals Office (“AAO”) on December 3, 2010. On June 28, 2013, the AAO affirmed the- revocation decision and dismissed the appeal.
In July 2013, Bernardo, as owner of M & K, filed a complaint with the Massachusetts federal district court challenging the revocation of the visa petition approval. On November 12, 2013, the AAO withdrew its decision and reopened the matter sua sponte. It requested additional evidence, which M & K provided. After considering the evidence, on February 28, 2014, the AAO dismissed the appeal, finding again that there were inconsistencies in the evidence, and that M & K had failed to prove that Freitas had the necessary work experience. On March 28, 2014, the government filed a motion to dismiss the district court proceeding for lack of jurisdiction. After briefing, on December 8, 2014, the district court issued a memorandum and order granting the government’s motion and dismissing the case for lack of subject matter jurisdiction. Bernardo v. Napolitano, No. 13-11827, 2014 WL 6905107 (D.Mass. Dec. 8, 2014). This appeal followed.
II.
We review de novo a district court’s order dismissing a case for lack of subject matter jurisdiction. McCloskey v. Mueller, 446 F.3d 262, 265-66 (1st Cir.2006). “In doing so, [we] accept [] the well-pleaded factual allegations of the plaintiffs complaint and indulge[ ] all reasonable inferences in the plaintiffs favor.” Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 16 (1st Cir.2006).
Bernardo claims federal jurisdiction under, inter alia, § 702 of the Administrative Procedure Act (“APA”), which “confers a general cause of action upon persons ‘adversely affected or aggrieved by agency action within the meaning of a relevant statute.’ ” Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) (quoting 5 U.S.C. § 702). However, § 701 of the APA “withdraws that cause of action to the extent the relevant statute ‘precluded] judicial *484 review.’ ” Id. (alteration in original) (quoting 5 U.S.C. § 701(a)(1)). Such is the case before us.[2]
The relevant statute, 8 U.S.C. § 1252(a)(2)(B)(ii), removes judicial review of the Attorney General’s and the Secretary of Homeland Security’s discretionary decisions made under Title 8, Chapter 12, Subchapter II of the U.S.Code:[3]
Notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.
8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).
The unambiguous language of § 1252(a)(2)(B)(ii) withdraws judicial review from decisions “the authority for which is specified ... to be in the discretion of the ... Secretary of Homeland Security.” Id.[4] It is not contested that such decisions are not subject to judicial review. So we must determine whether the decision to revoke a visa petition approval is specified to be in the Secretary of Homeland Security’s discretion.
The visa petition approval was revoked pursuant to 8 U.S.C. § 1155. Section 1155, which falls under Subchapter II, provides in relevant part:
The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved' by him under section 1154 of this title.
8 U.S.C. § 1155. We join seven of our sister circuits and conclude that this decision is discretionary, and so not subject to judicial review. See Mehanna v. U.S. Citizenship & Immigration Servs., 677 F.3d 312, 313 (6th Cir.2012); Green v. Napolitano, 627 F.3d 1341, 1343 (10th Cir.2010); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir.2009); Sands v. U.S. Dep’t of Homeland Sec., 308 Fed.Appx. 418, 419-20 (11th Cir.2009) (per curiam); Ghanem v. Upchurch, 481 F.3d 222, 223 (5th Cir.2007); Jilin Pharm. USA, Inc. v. Chertoff 447 F.3d 196, 200-05 (3d Cir.2006); El-Khader v. Monica, 366 F.3d 562, 567-68 (7th Cir.2004).[5] One panel majority in one circuit views the issue differently. See ANA Int’l Inc. v. Way, 393 F.3d 886, 893- *485 95 (9th Cir.2004) (holding, with one panel member dissenting, that under § 1155, “the authority of the Attorney General to revoke visa petitions is bounded by objective criteria,” id. at 894, and so § 1252(a)(2)(B)(ii) does not remove judicial review). Our dissenting colleague also views it differently.
We acknowledge the “presumption favoring interpretations of statutes [to] allow judicial review of administrative action.” Kucana, 558 U.S. at 237, 130 S.Ct. 827 (alteration in original) (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 63-64, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). However, this “presumption ... is just that — a presumption.... [L]ike all presumptions used in interpreting statutes, [it] may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent.” Block, 467 U.S. at 349, 104 S.Ct. 2450; see also Mach Mining, LLC v. EEOC, — U.S. -, 135 S.Ct. 1645, 1651, 191 L.Ed.2d 607 (2015). Here we have specific language: § 1252(a)(2)(B)(ii) withdraws judicial review from decisions committed to the Secretary of Homeland Security’s discretion, and § 1155 clearly indicates that the decision to revoke the approval of a visa petition is discretionary.
At least three language choices in § 1155 dictate this conclusion: “may,” “at any time,” and “for what he deems to be good and sufficient cause.” See Ghanem, 481 F.3d at 224; Jilin, 447 F.3d at 203-05 (identifying four indications by separating “deems to be” from “good and sufficient cause”). “By using the precatory term ‘may,’ rather than the directory term ‘shall,’ Congress indicated its intent to make [the decision] discretionary....” United States v. Aponte-Guzmán, 696 F.3d 157, 160 (1st Cir.2012); see also Haig v. Agee, 453 U.S. 280, 294 n. 26, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981) (explaining that “ ‘may’ expressly recognizes substantial discretion”). But see Zadvydas v. Davis, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (“But while ‘may’ suggests discretion, it does not necessarily suggest unlimited discretion.”).[6]
*486 Including “at any time” is also proof of Congress’s intent to withhold judicial review. See Mehanna, 677 F.3d at 315; Jilin, 447 F.3d at 203; El-Khader, 366 F.3d at 567. As the Third Circuit explained, “the discretion to revoke ‘at any time’ had once been restricted by [a] now-defunct notice requirement” in the statute. Jilin, 447 F.3d at 203 (citing Firstland Int’l, Inc. v. U.S. INS, 377 F.3d 127, 132 (2d Cir.2004); Intelligence Reform and Terrorism Prevention Act of 2004, Pub.L. No. 108-458, § 5304(c), 118 Stat. 3638, 3736). “Congress’s elimination of this requirement strongly indicates an intent to strengthen the discretion of the Secretary of Homeland Security to revoke approval of petitions.” Id.
Third, the language “for what [the Secretary] deems to be good and sufficient cause” makes clear that what constitutes “good and sufficient cause” is within the Secretary’s discretion. See Ghanem, 481 F.3d at 224-25 (quoting Webster’s New Int’l Dictionary 589 (3d ed.1981) as defining “deem” as “to sit in judgment upon,” and interpreting “the phrase ‘for what he deems’ as vesting complete discretion in the Secretary to determine what constitutes good and sufficient cause”). Together, these phrases in the statute determine the question of discretion. The 2010 Supreme Court case Kucana v. Holder supports this conclusion. See 558 U.S. at 246-47, 130 S.Ct. 827 (explaining that the language “any other decision” in § 1252(a) (2) (B) (ii) refers to decisions “made discretionary by legislation”).[7]
Bernardo and the dissent make much of footnote 10 of Kucana, which says, “the statutory proscription Congress enacted, § 1252(a)(2)(B)(ii), speaks of authority ‘specified’ — not merely assumed or contemplated — to be in the Attorney General’s discretion,” 558 U.S. at 243 n. 10, 130 S.Ct. 827 (citing Webster’s New Collegiate Dictionary 1116 (1974), which defined “specify” as “to name or state explicitly or in detail”). We think that § 1155’s language, which includes that the Secretary “may, at any time, for what he deems to be good and sufficient cause,” does clearly specify discretion. See Mehanna, 677 F.3d at 316 (“[Sjection 1155 ‘does not merely imply or anticipate that the Secretary -has discretion to revoke’ a visa petition, but explicitly ‘authorizes revocation for what the Secretary “deems to be good and sufficient cause.” ’ ” (quoting Green, 627 F.3d at 1346)). Bernardo’s argument to the contrary — that “Congress did not specify that visa [petition] revocations are within the Secretary’s discretion for purposes of stripping district courts of jurisdiction under 8 U.S.C. § 1252(a)(2)([B])(ii)” — seems to rest on a notion that “specified” means that Congress must use the word “discretion” for a decision to be discretionary, and so not subject to judicial review. But such a position is rejected by Kucana itself. As the Court noted, “Congress excepted from § 1252(a)(2)(B)(ii) ‘the granting of relief under [§ ] 1158(a).’ ” Kucana, 558 U.S. at 247 n. 13, 130 S.Ct. 827 (alteration in original). “Section 1158 concerns applications for asylum.” Id. Notwithstanding the absence of the word “discretion” in the relevant provisions of § 1158, the Court explained that “[ajbsent the excep *487 tion, asylum applicants might fall within § 1252(a)(2)(B)(ii)’s jurisdictional bar because a statutory provision, § 1158(b)(1)(A), specifies that ‘the Attorney General may grant asylum.’ ” Id. (citing Zadvydas, 533 U.S. at 697, 121 S.Ct. 2491, for the proposition that “ ‘may5 suggests discretion”). As the Court suggested, and we agree, statutory language can be “specified” even absent the use of the word “discretion.” Accord ANA Int’l Inc., 393 F.3d at 898 (Tallman, J., dissenting) (“Though it might make our job a bit easier, we should not require our lawmakers to recite the words ‘sole and unre-viewable discretion’ as some sort of talis-manic incantation before we can conclude that a statute means what it says.”); Mohammad v. Napolitano, 680 F.Supp.2d 1, 6 (D.D.C.2009).
Bernardo and the dissent’s argument that “good and sufficient cause” imposes a non-discretionary legal standard that is subject to judicial review is also unavailing. Bernardo and the dissent argue that “good and sufficient cause” constitutes a standard that meaningfully curtails the Secretary’s discretion. Based on some decisions from the Board of Immigration Appeals (“BIA”) and the AAO, the dissent posits that “good and sufficient cause” exists when “the evidence of record af the time the decision is rendered ... would warrant a denial” of the visa petition. See, e.g., In re Ho, 19 I. & N. Dec. 582, 589-90 (BIA 1988); In re Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990); In re [Identifying Information Redacted by Agency ], 2013 WL 5722884, at *6 (AAO Feb. 13, 2013).
We disagree with the premise that the phrase “good and sufficient cause” destroys the Secretary’s discretion. We also demonstrate that the canons of construction do not support the dissent. As to both points, in the years preceding the most recent reenactment of § 1155, courts had multiple occasions to interpret that statute, including the phrase “good and sufficient cause.” In doing so, a number of them concluded that “the determination of whether there exists ‘good and sufficient cause’ ... necessarily is highly subjective, and there exist no strict standards for making this determination.” El-Khader, 366 F.3d at 567; see also Systronics Corp. v. INS, 153 F.Supp.2d 7, 11-12 (D.D.C.2001) (“[N]o strict standards exist to determine when ‘good and sufficient cause’ is present. The standard seems highly subjective, much like ‘good moral character’ and ‘extreme hardship.’ ”); cf. Firstland, 377 F.3d at 131 (suggesting that under § 1155, “the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General”); Pierno v. INS, 397 F.2d 949, 950 (2d Cir.1968) (observing that this section “is permissive; it grants the Attorney General discretion in determining what shall constitute good and sufficient cause and whether revocation of approval shall occur or be withheld in those cases where there is good and sufficient cause for revocation”).[8]
The dissent nonetheless tries to show that the BIA had an understanding that its decision-making was non-discretionary and that Congress shared that understanding when it reenacted § 1155. The dissent invokes two related principles of statutory construction. First the dissent argues, when Congress uses a “term of art” in legislation, it “presumably knows and adopts the cluster of ideas that were attached- to each borrowed word in the body of learning from which it was taken.” Molzof v. United States, 502 U.S. 301, 307, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992) *488 (quoting Morissette v. United States, 342 U.S. 246, 253, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). The dissent suggests that “good and sufficient cause” constitutes a term of art, and that Congress obviously intended to incorporate its supposedly well-established meaning into § 1155 when it reenacted the statute.
However, the dissent misapplies the “term of art” canon. Even if “good and sufficient cause” would now constitute a “term of art” — a proposition we do not accept — -this phrase was not a “term of art” at the time § 1155 was enacted in 1952. As the cases cited by the dissent make clear, we generally apply this rule of statutory construction with respect to concepts that are “well understood” at the time of a statute’s enactment. Gustafson v. Alloyd Co., 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995); see also Molzof, 502 U.S. at 307, 112 S.Ct. 711 (“Legal dictionaries in existence when the FTCA was drafted and enacted indicate that ‘punitive damages’ were commonly understood to be damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression.” (emphasis added)); Sullivan v. Stroop, 496 U.S. 478, 483, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) (“Congress’ use of ‘child support’ throughout Title IV shows no intent to depart from common usage.”).
This, obviously, does not apply to the case at hand. The dissent’s understanding of “good and sufficient cause” is rooted in a handful of decisions from the BIA that have been issued decades after the statute’s enactment. The dissent does not suggest (nor could it) that “good and sufficient cause” had a longstanding or well-settled meaning at the time of § 1155’s enactment.
And so the dissent next conflates the “term of art” canon with the doctrine of legislative ratification. The Supreme Court has explained, “Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.” Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The doctrine of legislative ratification would, at first glance, seem to be a much better fit for the dissent’s argument: the BIA’s understanding of “good and sufficient cause,” while not a term of art, is nonetheless an administrative interpretation of a statute of which Congress might be presumed to be aware. And indeed, Congress reenacted § 1155 in 1996 and 2004 without disturbing the language of “good and sufficient cause” in the years since the BIA first set forth its interpretation of that phrase.
However, this canon of statutory interpretation is of no help to the dissent. For the legislative ratification canon to apply, two requirements must be met: (1) Congress must reenact the statute without change; and (2) “[t]he supposed judicial consensus [must be] so broad and unquestioned that we must presume Congress knew of and endorsed it.” Jama v. Immigration & Customs Enf't, 543 U.S. 335, 349, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005). Here, the second requirement is lacking.[9] There was certainly no “broad and unquestioned” judicial consensus that “good and sufficient cause” had the interpretation the dissent advocates, nor does the dissent argue as much. In fact, as we have discussed above, a number of courts had interpreted the determination of whether there was “good and sufficient cause” as a decision left to the Secretary’s discretion.
*489 Instead, the dissent points to BIA and AAO decisions as evidence Congress adopted the “agency’s understanding of “good and sufficient cause.” ” These decisions are plainly insufficient to warrant the presumption that “Congress knew of and endorsed” such an understanding, id, of “good and sufficient cause.” Cf. id. at 350, 125 S.Ct. 694 (“decisions of two Courts of Appeals” insufficient to establish judicial consensus); United States v. Powell, 379 U.S. 48, 55 n. 13, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) (decisions of two district courts and two courts of appeals “represented] neither a settled judicial construction ... nor one which we could be justified in presuming Congress, by its silence, impliedly approved”). By the dissent’s reasoning, if Congress is presumed to have been aware of the BIA and AAO’s treatment of § 1155, it was undoubtedly aware of the judiciary’s interpretations thereof as well. Which is to say that there was no “broad and unquestioned” consensus as to the meaning of “good and sufficient cause” the dissent proposes. See Jama, 543 U.S. at 349, 125 S.Ct. 694.
To be sure, the Supreme Court has suggested that Congressional reenactment of a statute that has been interpreted by an agency can provide “persuasive evidence that the [agency’s] interpretation is the one intended by Congress.” CFTC v. Schor, 478 U.S. 833, 846, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)). However, the circumstances giving rise to such a situation do not present themselves here. Specifically, here we have no evidence that Congress was even aware of the purported administrative interpretation, let alone intended to adopt it. By contrast, in Schor, the CFTC had declared by regulation its interpretation. Id. at 845, 106 S.Ct. 3245. Further, the subsequent legislative history provided “abundant evidence that Congress both contemplated and authorized” the CFTC’s interpretation. Id. at 847, 106 S.Ct. 3245. Similarly, in United States v. Board of Commissioners of Sheffield, Alabama, “the Attorney General’s longstanding construction ... was reported to Congress by Justice Department officials,” 435 U.S. 110, 132, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978), and “the legislative history of the re-enactment showed that Congress agreed with that interpretation,” id. at 135, 98 S.Ct. 965. The dissent identifies nothing within the legislative history of § 1155 that suggests Congress was aware of the BIA and AAO’s interpretations of “good and sufficient cause.” Cf. Massachusetts v. FDIC, 102 F.3d 615, 620-21 (1st Cir.1996) (“Congress is often deemed to have adopted an agency’s interpretation of a statute when, knowing of the agency interpretation, it reenacts the statute without significant change.” (emphasis added)).[10]
Instead, the dissent merely assumes that Congress was aware of some BIA and AAO decisions when reenacting § 1155. As we have discussed, there is no basis for making such an assumption here. Cf. Ze *490 nith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 336 n. 7, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (“[The respondent] can point to no direct evidence that Congress ever considered the issue now before us or voiced any views upon it; on the contrary, it appears that Congress left the matter for authoritative resolution in the courts.”); Zuber v. Allen, 396 U.S. 168, 185 n. 21, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969) (“Where, as in the ease before us, there is no indication that a subsequent Congress has addressed itself to the particular problem, we are unpersuaded that silence is tantamount to acquiescence, let alone the approval discerned by the dissent.”).
Absent evidence Congress was aware of the administrative interpretations, it is significant that we lack any affirmative indication from Congress that it intended to ratify these interpretations. We have explained that it is generally inappropriate to apply the doctrine of legislative ratification without some evidence that Congress affirmatively sought to ratify the interpretation of a statute — particularly when, as here, an ambiguous term lacks a widely accepted meaning and we lack any indication that Congress was even aware of the administrative interpretation suggested.[11] In Molina v. INS, in an opinion written by then-Chief Judge Breyer, we explained that “Congressional reenactment of statutory language does not normally or automatically indícate a legislative intent to freeze all pre-existing agency interpretations of language, forever after immunizing them from change.” 981 F.2d 14, 23 (1st Cir.1992); see also ACLU v. Clapper, 785 F.3d 787, 819 (2d Cir.2015) (“[I]n the case of an administrative interpretation of a statute, for the doctrine of legislative ratification to apply, we must first ‘ascertain whether Congress has spoken clearly enough to constitute acceptance and approval of an administrative interpretation. Mere reenactment is insufficient.’ ” (quoting Isaacs v. Bowen, 865 F.2d 468, 473 (2d Cir.1989))); Ass’n of Am. R.R.s v. Interstate Commerce Comm’n, 564 F.2d 486, 493 (D.C.Cir.1977) (“The Supreme Court has indicated that in order to bring this ‘doctrine of reenactment’ into play, Congress must not only have been made aware of the administrative interpretation, but must also have given some ‘affirmative indication’ of such intent.”). Accordingly, given the complete lack of evidence that Congress was aware of the BIA and AAO’s interpretation of “good and sufficient cause,” let alone affirmatively intended to ratify it, we are hard-pressed to conclude that a legislative ratification took place.[12]
*491 In sum, “good and sufficient cause” is not a term of art, much less does it establish that the Secretary’s decision is non-discretionary. Further, there is no basis to assume that Congress shared that understanding when it reenacted § 1155. Thus, the dissent is incorrect to conclude that the Secretary’s discretion is bounded by “objective criteria,” or a legal standard that could be applied by a reviewing court. The statute provides no such standard, and there is no indication that Congress intended to so constrain the Secretary’s discretion.
Moreover, Bernardo and the dissent’s argument focuses on the words “good and sufficient cause” at the expense of the words “for what he deems to be.” We are not free to do so. See Regions Hosp. v. Shalala, 522 U.S. 448, 467, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998) (“It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.” (quoting Wash. Mkt. Co. v. Hoffman, 101 U.S. 112, 115, 25 L.Ed. 782 (1879))). As the Third Circuit explained, “[t]he phrase ‘for what [the Secretary] deems to be good and sufficient cause,’ cannot be modified by judicial fiat to read- the naked words, ‘for good and sufficient cause.’ ” Jilin, 447 F.3d at 204 (second alteration in original). The language “for what [the Secretary] deems to be good and sufficient cause” makes clear that what constitutes “good and sufficient cause” is within the Secretary’s discretion. See Ghanem, 481 F.3d at 224-25.[13]
Our reading mirrors a conclusion reached by the Supreme Court in Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). In Webster, the Court examined § 102(c) of the National Security Act of 1947:
[T]he Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States....
Id. at 594, 108 S.Ct. 2047 (alterations in original) (quoting 50 U.S.C. § 403(c) (1947)).[14] The Court read that statute to remove judicial review under APA § 701(a)(2), which precludes judicial review where agency action is “committed to agency discretion by law.” Id. at 599-601, 108 S.Ct. 2047.[15] It explained:
*492 [Section] 102(c) allows termination of an Agency employee whenever the Director “shall deem such termination necessary or advisable in the interests of the United States” (emphasis added), not simply when the dismissal is necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review.
Id. at 600, 108 S.Ct. 2047 (quoting 50 U.S.C. § 403(c) (1947));[16] cf. Fed. Energy Admin. v. Algonquin SNG, Inc., 426 U.S. 548, 561, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976) (“In authorizing the President to ‘take such action, and for such time, as he deems necessary to adjust the imports of [an] article and its derivatives,’ the language of [the statute] seems clearly to grant him a measure of discretion in determining the method to be used to adjust imports.”).
Bernardo and the dissent’s argument that Kucana v. Holder changes the analysis also fails. In Kucana, the Court was faced with a regulation that provided, in relevant part, that “[t]he decision to grant or deny a motion to reopen ... is within the discretion of the Board [of Immigration Appeals].” 558 U.S. at 239, 130 S.Ct. 827 (second alteration in original) (quoting 8 C.F.R. § 1003.2(a)). Examining this regulation, the Court addressed the question of “whether the proscription of judicial review stated in § 1252(a)(2)(B) applies not only to Attorney General determinations made discretionary by statute, but also to determinations declared discretionary by the Attorney General himself through regulation.” Id. at 237, 130 S.Ct. 827. The Court’s conclusion that § 1252(a)(2)(B)(ii)’s language “specified under this subchapter” includes “statutory, but not ... regulatory, specifications,” id., was based on several considerations: “the longstanding exercise of judicial review of administrative rulings on reopening motions,” id.; “the text and context of § 1252(a)(2)(B),” id.; “the history of the relevant statutory provisions,” id.; “the ‘presumption favoring interpretations of statutes [to] allow judicial review of administrative action,’ ” id. (alteration in original) (quoting Reno, 509 U.S. at 63-64, 113 S.Ct. 2485); and “[s]eparation-of-powers concerns, [which] caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary’s domain,” id.
The dissent sua sponte focuses on the Court’s second consideration, § 1252(a)(2)(B)’s structure.[17] The dissent correctly points out that the Supreme Court stated, “[t]he proximity of clauses (i) and (ii), and the words linking them — ‘any other decision’ — suggests that Congress had in mind decisions of the same genre,” id. at 246, 130 S.Ct. 827. The dissent relies on that sentence to argue that because revocation of a visa petition approval *493 under § 1155 is not a decision “of the same genre” as those listed in § 1252(a)(2)(B)®, it is not encompassed by § 1252(a)(2)(B)(ii) at all. However, the dissent omits the crucial end of that sentence, “ie., those made discretionary by legislation.” Id. at 246-47, 130 S.Ct. 827. Indeed, the Court goes on to say, “[r]ead harmoniously, both clauses convey that Congress barred review of discretionary decisions only when Congress itself set out the Attorney General’s discretionary authority in the statute.” Id. at 247, 130 S.Ct. 827. To the extent the Court lists the types of decisions within “the character of the decisions Congress enumerated in § 1252(a)(2)(B)®,” id., it was doing so to set up a contrast with motions to reopen, which it described as “procedural device[s] serving to ensure ‘that aliens [a]re getting a fair chance to have their claims heard,’ ” id. at 248, 130 S.Ct. 827 (second alteration in original) (quoting Tr. of Oral Arg. 17). The question of whether revocations of visa petition approvals are of “a like kind” was not before the Court, nor did it purport to address it. Id. at 246-48, 130 S.Ct. 827.[18]
Finally, our conclusion does not lead to a “senseless proposition,” as Bernardo and the dissent suggest. Some visa petition approval decisions, in particular, for certain preference visas, have been held subject to judicial review. See, e.g., Soltane v. U.S. Dep’t of Justice, 381 F.3d 143, 146-48 (3d Cir.2004) (holding there is judicial review of denials of visa petitions under 8 U.S.C. § 1153(b)(4), which provides that “[vjisas shall be made available ... to qualified special immigrants”); Spencer Enters., Inc. v. United States, 345 F.3d 683, 692 (9th Cir.2003) (concluding “that § 1252(a)(2)(B)(ii) does not preclude judicial review of the decision whether to issue a visa pursuant to [8 U.S.C.] § 1153(b)(5)”). Our dissenting colleague argues that if there is judicial review of the decision not to grant a visa petition to start with, then it would be anomalous to deny judicial review of decisions to revoke petition approvals. However, the argument works the other way.
As an initial matter, assuming initial visa petition denials are reviewable, the language as to the authority to grant preference visas is substantially different than the language as to the authority to revoke visa petition approvals. Compare, e.g., 8 U.S.C. § 1153(b)(2)-(5) (“Visas shall be made available----” (emphasis added)), and 8 U.S.C. § 1154(b) (“After an investigation of the facts in each case, and after consultation with the Secretary of Labor ... the Attorney General shall ... approve the petition.... ” (emphasis added)),[19] with 8 U.S.C. § 1155 (“The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title.”). Indeed, “Congress’ use of the permissive ‘may’ in [§ 1155] contrasts with the legislators’ use of a mandatory ‘shall’ in the” preceding sections. Lopez v. Davis, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001). The difference in these language choices *494 supports our conclusion that Congress intended to treat visa petition denials and revocations of visa petition approvals differently.[20] Cf. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (“[I]t is a general principle of statutory construction that when ‘Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.’ ” (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983))).
In any event, the so-called “inconsistency’ of allowing judicial review of certain visa petition denials but not the revocation of visa petition approvals does not undermine our conclusion that that is what Congress intended. See Jilin, 447 F.3d at 205 n. 11 (explaining that “§ 1252(a)(2)(B) is one of ‘many provisions of [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 that] are aimed at protecting the Executive’s discretion from the courts — indeed, that can fairly be said to be the theme of the legislation,’” id. (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 486, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)); and that “Congress [in 2004 and 2005] expanded administrative discretion by removing the notice requirement under § 1155 and by establishing that § 1252(a)(2)(B)(ii) applies beyond removal proceedings,” id.; and so “there is ample reason to believe that Congress could have intended to bolster the discretion of the Secretary of Homeland Security to revoke approval of petitions,” id.).[21] Congress has to structure and allocate the resources of our immigration system. As such, judicial review may be thought to be warranted in some, but not all, situations. Further, we note that petitioners have an opportunity to respond to the NOIR, receive an explanation of why the petition’s approval was revoked, and are afforded an administrative appeal. See 8 C.F.R. § 205.2 (requiring notice of intent to revoke, the opportunity for the petitioner to offer evidence supporting the petition, an explanation of “the specific reasons for the revocation,” and the opportunity for the petitioner to file an administrative appeal). Congress could quite sensibly have concluded that is enough.[22]
III.
For the reasons set forth above, the order of the district court is affirmed.

. For a good discussion of the process of obtaining permanent residency and the role that an 1-140 Immigrant Petition for Alien Worker, 8 U.S.C. § 1153(b), plays in that process, see Mantena v. Johnson, 809 F.3d 721 (2d Cir.2015). What is at issue here is the revocation of an 1-140 visa petition approval.

. The government states that it “is not arguing in favor of the application of 5 U.S.C. § 701(a)(2).” Section 701(a)(2) withdraws the § 702 cause of action where "agency action is committed to agency discretion by law.” 5 U.S.C. § 701(a)(2). Because we decide our case under 5 U.S.C. § 701(a)(1), we do not discuss whether 5 U.S.C. § 701(a)(2) applies.

. Subchapter II encompasses 8 U.S.C. §§ 1151-1381.

. We agree with Judge Tallman of the Ninth Circuit, and the Third, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits that this is the pertinent language to be considered. See Mehanna v. U.S. Citizenship & Immigration Servs., 677 F.3d 312, 314 (6th Cir.2012); Green v. Napolitano, 627 F.3d 1341, 1343-44 (10th Cir.2010); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir.2009); Sands v. U.S. Dep't of Homeland Sec., 308 Fed.Appx. 418, 419-20 (11th Cir.2009) (per curiam); Ghanem v. Upchurch, 481 F.3d 222, 223 (5th Cir.2007); Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 199-200 (3d Cir.2006); ANA Int’l Inc. v. Way, 393 F.3d 886, 896 (9th Cir.2004) (Tallman, J., dissenting); El-Khader v. Monica, 366 F.3d 562, 566 (7th Cir.2004).

.In a recent decision, the Second Circuit held that federal courts have subject matter jurisdiction to review whether USCIS complied with any applicable procedural requirements in revoking a visa petition approval. Mantena, 809 F.3d 721, 729-31. This question is not before us, as Bernardo does not argue that USCIS failed to comply with any procedural notice requirements but rather *485 challenges only the substantive revocation decision. The Second Circuit did say that it had previously stated in dicta that "the substance of the decision that there should be a revocation is committed to the discretion of the [Secretary]" id. at 728 (alteration in original) (quoting Firstland Int’l, Inc. v. U.S. INS, 377 F.3d 127, 131 (2d Cir.2004)), and noted that the majority of circuits followed this position, id. However, because "the actual issue” before the Second Circuit was "a different one,” it did not reach the question of whether the substantive decision to revoke a visa petition approval was reviewable. Id. at 729-30.

. Zadvydas is clearly distinguishable from the case here. In Zadvydas, the relevant statute provided that "An alien ordered removed ... may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision....” 533 U.S. at 682, 121 S.Ct. 2491 (second alteration in original) (quoting 8 U.S.C..§ 1231(a)(6)). There, the question was whether the word "may” suggested Congress’s intent to make this detention indefinite — not whether the Attorney General’s decision to detain was discretionary. Id. Accordingly, § 1252(a)(2)(B)(ii) did not apply. See id. at 688, 121 S.Ct. 2491 ("The aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General’s authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion.”). Further, nothing in the statute suggested the length of the detention could be indefinite, and the only textual support for the government's argument was the word "may,” see id. at 682, 697. Here, we have not only the word “may” but also the phrases, "at any time” and "for what he deems to be good and sufficient cause.”
To be sure, although “may” is usually interpreted as conferring discretionary authority, "[t]his common-sense principle of statutory construction is by no means invariable ... and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the *486 statute.” United States v. Rodgers, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Here, however, there is no such indication, and the text of the statute, which also includes "at any time” and “for what he deems to be good and sufficient cause,” further supports our conclusion that the decision is discretionary.

. We reject the argument that the Board of Immigration Appeals’ attempt to provide regulatory assistance in interpreting language is germane to our issue. See ANA Int’l Inc., 393 F.3d at 898 (Tallman, J., dissenting).

. The Seventh Circuit issued its opinion in El-Khader on April 29, 2004, and the Second Circuit issued its decision in Firstland on August 2, 2004. By contrast, Pub.L. No. 1 OS-458 (the most recent reenactment of § 1155) was not enacted until December of that year.

. As we explain below, the legislative ratification doctrine can apply to administrative interpretations as well. However, here, neither the judicial nor the administrative interpretations are sufficient to warrant use of this canon.

. Indeed, the dissent’s oblique attempt to suggest that “Congress was uniquely aware of the phrase ‘good and sufficient cause’ as a term of art” assumes its own conclusion. The dissent points out that while the terms "good cause,” "reasonable cause,” and “sufficient cause” are found elsewhere in the Immigration and Nationality Act, "good and sufficient cause” is unique to § 1155. Ergo, the dissent argues, Congress's decision not to change the unique phrase “good and sufficient cause” when it reenacted § 1155 "reinforces the conclusion that Congress understood ‘good and sufficient cause’ as a term of art in the visa revocation context.” This reasoning, that Congress “was uniquely aware of the phrase 'good and sufficient cause' as a term of art” because “it clearly knew how to depart from the term’s uniquely associated meaning” and did not do so, assumes its own conclusion— that Congress knew the phrase "good and sufficient cause” had unique meaning.

. We do not hold this is a doctrinal requirement, as the dissent suggests we do, but rather that when there is no indication that Congress was even aware of the administrative interpretation of a phrase, it is generally not appropriate to assume Congress intended to ratify an interpretation absent an affirmative indication.

. The foregoing also demonstrates why the dissent's reliance on Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), is misplaced. In Curran, the Supreme Court considered whether reenactment of a statute evinced Congressional intent to preserve a preexisting interpretation of that statute. Id. at 379-82, 102 S.Ct. 1825. And as the dissent notes, the Court held that "the fact that a comprehensive reexamination and significant amendment of the [statute] left intact the statutory provisions [at issue] ... is itself evidence that Congress affirmatively intended to preserve that [interpretation by an agency].” Id. at 381-82, 102 S.Ct. 1825. However, the dissent omits the critical fact that the interpretation in question was "uniform and well understood.” Id. at 380, 102 S.Ct. 1825. Similarly, as the Supreme Court noted, "it is abundantly clear that [this interpretation] was a part of the 'contemporary legal context’ in which Congress legislated." Id. at 381, 102 S.Ct. 1825. Accordingly, the Court held, "[i]n that context," Congress's decision to retain the relevant provisions could be taken as evidence of its affirmative intent to preserve the interpretation. Id. (emphasis added). Here, however, the BIA’s interpretation of "good *491 and sufficient cause” was neither well understood nor a widely accepted part of the contemporary legal landscape. Congress's decision to retain "good and sufficient cause” (i.e., even, as it modified other portions of § 1155) is not affirmative evidence of its intent to ratify the BIA’s standard, let alone its awareness of the administrative interpretation.

. It is for this reason that the dissent's statement, "[i]f ‘good and sufficient cause' provides a legal standard that circumscribes the Secretary’s visa revocation decision, the decision is subject to judicial review,” sets out a straw man.

. The dissent tries to distinguish Webster based on the words "in his discretion” in the National Security Act. However, Webster addressed the question of whether the clause "whenever he shall deem such termination necessary or advisable in the interests of the United States” provided criteria that could limit this discretion — a question the Court answered in the negative. See 486 U.S. at 600, 108 S.Ct. 2047.

. Webster was decided under 5 U.S.C. § 701(a)(2), whether "agency action is committed to agency discretion by law,” while Bernardo's case is a question of whether § 1252(a)(2)(b)(ii) precludes judicial review under APA § 701(a)(1). See supra note 2. However, we must still determine whether § 1155 is discretionary because § 1252(a)(2)(B)(ii) precludes review of discretionary decisions. Therefore, the analysis of whether under a statute, "agency action is committed to agency discretion by law,” would apply to the question of whether § 1155 is discretionary.

. To the extent the dissent attempts to distinguish Webster by saying "in the interests of the United States” is "a policy-driven assessment,” while "good and sufficient cause” is "predicated on binary outcomes,” that argument fails. As we have previously explained, the dissent's claim that “good and sufficient cause” has objective meaning is incorrect.

. Bernardo does not develop this argument in his brief; he raised it for the first time at oral argument. It is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). The dissent is incorrect to make an argument waived by the appellants and to which the appellees had no occasion to reply. The dissent counters that our rule of waiver is “not so broad as to engulf 'legal theories.' " However, our case law is quite settled on this point: "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work, create the ossature for the argument, and put flesh on its bones.” Id..

. As the issue is waived, we decline to reach it. We note, however, that this matter is far less clear-cut than the dissent makes it out to be.

. The language of 8 U.S.C. § 1153(b)(4) has been well analyzed by the Third Circuit in Soltane, which concluded that the Attorney General’s action of granting preference visas was not discretionary. 381 F.3d at 146-48. The Third Circuit thus held that denial of a visa petition under § 1153(b)(4) was subject to judicial review. Id.
We have not surveyed all visa approval statutes, nor have the parties briefed the issue. There are at least seven different types of visa petitions, including at least three different types of employment-based visa petitions.

. Because of this disparate language and context, the cases cited by the dissent do not undermine — and if anything support — our conclusion.

. We are unaware of any longstanding tradition of judicial review of the revocation of visa petition approvals. Cf. Kucana, 558 U.S. at 237, 130 S.Ct. 827. To be sure, there may have been isolated examples of judicial review of these decisions prior to the enactment of § 1252(a)(2)(B). See, e.g., Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir.1984); Joseph v. Landon, 679 F.2d 113, 115-16 (7th Cir.1982) (per curiam). However, we have been presented with no evidence that Congress would be changing a well-established practice by eliminating judicial review over these decisions.

.We note that § 1252(a)(2)(D) provides that “[n]othing in subparagraph (B) ... shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.” 8 U.S.C. § 1252(a)(2)(D). Bernardo does not argue that we have jurisdiction under § 1252(a)(2)(D).