In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2689

MARIA V. DIJAMCO,

*Plaintiff-Appellant,*

*v.*

CHAD F. WOLF, Acting Secretary of the Department of Homeland Security, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-3338 — **Sara L. Ellis**, *Judge.*

SUBMITTED JANUARY 23, 2020 — DECIDED JUNE 26, 2020

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Maria Dijamco came to the United States from the Philippines and sought lawful status to stay in the country through her mother who had a green card. What followed was a lengthy and tangled process that ultimately proved unsuccessful. Dijamco then filed suit in the district court, contending that the United States Citizenship and Immigration Service failed to follow its own laws and

regulations in revoking and refusing to reinstate her petition for a visa. The district court concluded that it lacked subject matter jurisdiction to consider any of Dijamco's claims. We agree and affirm.

**I**

A

Recognizing the importance of familial ties, our country's immigration laws allow citizens and lawful permanent residents to seek permission for their relatives to join them in the United States by filing visa petitions. The United States Citizenship and Immigration Service processes all types of requests for visas, including those premised on family relationships. USCIS's family-based visa system is complicated, and how it works depends in part on the precise family relationship as well as the legal status of the petitioner. What matters for purposes of this appeal is that Maria Dijamco's mother, a green card holder living in the United States, filed a visa petition on Dijamco's behalf in 1992. Though the petition received approval, Dijamco still had to wait for a visa to become available, as Congress restricts the number to be granted in a year. The wait can be lengthy. After four years of anticipation in the Philippines, Dijamco still had not received a visa. At that point, she decided to join her mother in the United States anyway, and she used fraudulent papers to do so.

Without fully recounting the twists and turns of Dijamco's quest for legal status, a few key events are important to this appeal. The first occurred in 2005, when a visa opened up and became available to Dijamco. That development allowed her to try to get a green card based on her pending visa petition. In immigration parlance, Dijamco's application for a green

card reflected an effort to adjust her status in the United States. See 8 U.S.C. § 1255 (explaining the processes through which noncitizens eligible for visas may seek long-term permanent residence via "adjustment of status").

The next meaningful event came after USCIS denied Dijamco's green card application and while her administrative appeal was pending. It was then that Dijamco's mother—who, recall, applied for a visa on Dijamco's behalf—passed away. This development had the consequence of automatically revoking Dijamco's visa petition, which, although previously having been approved by USCIS, had not yet been issued. See 8 C.F.R. § 205.1(a)(3)(i)(C). The revocation of the visa petition, in turn, meant that Dijamco no longer had a basis to seek to adjust her status to become a green card holder. Accordingly, USCIS dismissed her appeal based on the changed circumstances.

Dijamco made many attempts to revive her visa petition, including by seeking humanitarian reinstatement, a discretionary process by which the agency may reinstate a petition that was revoked because of the sponsor's death. See 8 C.F.R. § 205.1(a)(3)(i)(C)(2). The day after USCIS denied the request for humanitarian reinstatement, Congress enacted an amendment to the immigration code providing that the death of the petitioning family member did not automatically preclude a beneficiary from receiving a visa. See 8 U.S.C. § 1154, as amended by Department of Homeland Security Appropriations Act of 2010, Pub. L. No. 111-83 Stat. 2142, § 568(c)(1), 123 Stat. 2142, 2186 (2009). Despite Dijamco's attempts to take advantage of the new provision, the agency determined that it did not apply to her because her visa petition had been revoked and her request for humanitarian reinstatement denied

*before* the law took effect. As part of informing Dijamco of its decision, USCIS also stated that it would not exercise its equitable discretion to reopen her adjustment-of-status application because she entered the country fraudulently and worked without legal authorization.

The upshot of all of this came when USCIS informed Dijamco that she lacked lawful permission to stay in the United States.

B

After 13 years of seeking legal status through USCIS's administrative processes, Dijamco turned to federal court. Though USCIS had informed her that she lacked permission to remain in the country, the Department of Homeland Security had not taken any step to compel her removal. Had DHS done so, removal proceedings would have commenced and Dijamco would have found herself before an immigration judge. Those removal proceedings provide a clear pathway for judicial review because following a decision by an immigration judge and review by the Board of Immigration Appeals, a noncitizen like Dijamco can petition for review in a federal circuit court. See 8 U.S.C. § 1252.

Here, though, the flipside is true: the absence of removal proceedings against Dijamco meant that this path to judicial review was unavailable to her. Recognizing that reality, Dijamco pursued a less common route to challenge USCIS's decision—affirmatively filing a lawsuit in the district court.

Dijamco brought three claims. First, she invoked the Declaratory Judgment Act and sought an order requiring USCIS to process and finally issue her visa. Second, Dijamco brought a claim under the Administrative Procedure Act alleging that

USCIS's decision to revoke her visa petition following her mother's death was arbitrary and capricious. Third, Dijamco likewise contended that USCIS acted arbitrarily by denying her adjustment of status (green card) application.

For its part, the government moved under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Dijamco's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. Citing provisions of the Immigration and Nationality Act in which Congress circumscribed judicial review of immigration decisions, the government argued that Congress precluded review of each of Dijamco's three claims and, regardless, they were untimely and without merit. The district court agreed with the primary contention and dismissed each of Dijamco's claims for lack of subject matter jurisdiction. Dijamco's claims, the district court reasoned, either challenged unreviewable discretionary immigration decisions or sought to raise questions of law that can be heard only by a circuit court at the end of the removal process. See 8 U.S.C. § 1252(a)(2)(B), (a)(2)(D).

Dijamco now appeals.

## II

By any measure, Dijamco's quest to achieve status in the United States has followed a long and complex administrative path. This appeal turns on one and only one aspect of those efforts, and that reality simplifies our task.

Dijamco makes plain in her brief that she is appealing *only* the district court's dismissal of her claims (under the Declaratory Judgment Act and Administrative Procedure Act) challenging USCIS's decision to revoke her visa petition upon her mother's death. Dijamco unquestionably seeks reinstatement

of her visa petition with the ultimate goal of receiving a green card in the future, but she could not have been clearer in her brief when she emphasized that "the erroneous decisions which Defendant USCIS made with respect to Ms. Dijamco's Form I-485 [adjustment of status and green card] application . . . are not the subject of the instant appeal." Appellant's Br. at 14 n.3. We take her at her word.

The question, then, is whether Congress authorized judicial review of Dijamco's claims challenging USCIS's revocation of and refusal to reinstate her visa petition. The district court answered no, construing Dijamco's claims as raising only legal questions and therefore being unreviewable by the express terms of 8 U.S.C. § 1252(a)(2)(D). That provision, the court explained, allows judicial review of claims presenting legal questions only in a circuit court. We agree with the district court's ultimate conclusion that it lacked jurisdiction but get there by traveling a different path of reasoning.

A

The proper starting point is Dijamco's challenge to USCIS's revocation of her visa petition upon her mother's death. Her allegations of agency error are not the easiest to follow and seem at odds with themselves. She alternately contends in her complaint and again in her brief on appeal that USCIS wrongly revoked and should have reinstated her visa petition and that the agency did reinstate her petition but then arbitrarily revoked it. We see no basis for the claim that the agency ever reinstated her visa petition, and therefore focus on the revocation.

Dijamco's claim runs into limitations Congress has imposed on our judicial review in the Immigration and

Nationality Act. Section 242 makes plain that courts lack the authority to hear challenges to decisions that Congress entrusted to the immigration agencies' discretion, including certain enumerated categories of relief (for example, cancellation of removal and adjustment of status) and other decisions committed to agency discretion in other statutes. See 8 U.S.C. § 1252(a)(2)(B)(i) (enumerated categories of relief), § 1252(a)(2)(B)(ii) (any other matter of agency discretion).

This statutory state of affairs leads to a complicated patchwork of judicial review. Noncitizen plaintiffs like Dijamco can proceed with claims in federal court only if they can thread the eye of the needle and challenge an agency decision not insulated from review by Congress in the INA or another statute. See *id*. The jurisdictional inquiry requires closely reviewing the statutory language to discern whether the noncitizen's claims raise purely legal questions, which can be reviewed, or instead challenge decisions committed to an agency's discretion, which are unreviewable. See *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009) ("The key to this jurisdictional bar is the statutory language that governs the decision being challenged.").

USCIS's authority to revoke approved visa petitions comes from a provision of the INA. The relevant section provides that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him." 8 U.S.C. § 1155. By its terms, § 1155 covers visa petitions and vests broad discretion in DHS, which is precisely what Congress told us we cannot review in § 1252(a)(2)(B).

Our case law aligns with this exact conclusion. See *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir.

2017) (explaining that § 1252(a)(2)(B) "bars the courts from reviewing" decisions under § 1155); *El–Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004) (making the same point); see also *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016) (coming to the same conclusion and noting agreement among eight circuits).

Perhaps recognizing the limitation Congress placed on judicial review in the INA, Dijamco sought to challenge USCIS's revocation decision under the Administrative Procedure Act and, more specifically, by relying on its provision allowing courts to set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But the APA's general provision authorizing judicial review of final agency actions must yield to the INA's immigration-specific limitations. See *Bultasa*, 878 F.3d at 574 ("Appellants cannot avoid the jurisdictional bar established by 8 U.S.C. § 1252 simply by raising a claim under [§ 706] of the APA."); *Roland v. USCIS*, 850 F.3d 625, 629 n.3 (4th Cir. 2017) (explaining the same idea). Put most simply, the APA cannot be used to sidestep the highly specific limitations on judicial review enacted in the INA.

B

A second aspect of Dijamco's challenge to USCIS's revocation of her visa petition requires consideration. She asserts that, separate and apart from our precedent addressing judicial review of a revocation decision, USCIS had a duty to reconsider and reinstate her visa petition under 8 U.S.C. § 1154(*l*), the provision Congress added to the INA in 2009. Section 1154(*l*) provides that beneficiaries of pending or approved visa petitions who are living in the United States "shall have [their petitions adjudicated] notwithstanding the

death of the qualifying relative, unless the Secretary of Homeland Security determines, in the unreviewable discretion of the Secretary, that approval would not be in the public interest." *Id.* § 1154(*l*)(1). The amendment effected a sea change for family-based visa beneficiaries living in the United States because under prior law, USCIS automatically revoked visa petitions if the sponsoring resident passed away. See 8 C.F.R. § 205.1(a)(3)(i)(C). Dijamco witnessed this firsthand upon her mother's death.

We have not yet had occasion to consider § 1154(*l*) and, more specifically, whether it imposes upon USCIS nondiscretionary obligations when processing visa petitions that, in some circumstances, could be amenable to judicial review. But we need not delve into that question because USCIS both revoked Dijamco's visa petition and refused to reinstate it before the amendment took effect. The statute is silent about retroactive application and does not provide for reconsideration of petitions revoked before the amendment.

Dijamco seems to acknowledge that she cannot rely on § 1154(*l*) alone and instead invokes internal policy guidance issued by USCIS. That path fares no better, however. The guidance explains that for noncitizens who are victims of unfortunate timing like Dijamco, the agency will reconsider revoked petitions in certain circumstances—in essence recognizing its discretion to apply § 1154(*l*)'s relief to applications adjudicated before the passage of the law. See USCIS, APPROVAL OF PETITIONS AND APPLICATIONS AFTER THE DEATH OF THE QUALIFYING RELATIVE UNDER NEW SECTION 204(L) OF THE IMMIGRATION AND NATIONALITY ACT, PM-602-0017, at 13–14 (Dec. 16, 2010) (providing that an officer may "exercise favorably the discretion to reopen the petition and/or

application(s)"). But even if those guidelines had legal force—
a doubtful proposition, see *Krasilych v. Holder*, 583 F.3d 962,
966 (7th Cir. 2009)—retroactive application is entirely discre-
tionary and therefore beyond the scope of our review under
the INA. See 8 U.S.C. § 1252(a)(2)(B)(ii) (precluding judicial
review for discretionary decisions).

All of this leads us to one conclusion: USCIS exercised un-
reviewable discretion in both revoking Dijamco's petition and
refusing to reinstate it. In these circumstances, the district
court rightly concluded that it lacked jurisdiction to review
Dijamco's claim. Because Congress has mandated this out-
come, we AFFIRM.